# THE PULLMAN COMPANY v. COMMISSIONER OF TAXATION.[1]

January 4, 1947.

Nos. 33,977, 33,978, 33,979.

*Stearns & Stearns, Michael N. Lyons, Jr., Frank A. Malone, Lowell M. Greenlaw,* and *Herbert S. Anderson,* for relator.

*J. A. A. Burnquist,* Attorney General, and *David W. Lewis,* Assistant Attorney General, for respondent.

CHRISTIANSON, JUSTICE.

This matter, which has come to the writer by reassignment, involves demands for refund of franchise taxes paid by relator, The Pullman Company, for the years 1934, 1936, and 1937. Such taxes

[1]Reported in 25 N. W. (2d) 838.

were paid under and pursuant to L. 1933, c. 405, § 2. The amounts thus paid and refunds of which are here sought are $154.30 for 1934, $1,279.90 for 1936, and $1,829.73 plus interest of $380.64 for 1937.

Proceedings to secure refunds in all the cases were had before the commissioner of taxation, and, upon denial of the relief sought, appeal was taken to the board of tax appeals, where relator was likewise unsuccessful. Thereupon, the matters were brought here for review by certiorari. The three cases have been consolidated on appeal, but only one opinion will be written.

It is the contention of relator that it is entitled to a refund of the franchise taxes paid for the years 1934 and 1936 because in such years it was subject to and had paid the gross receipts tax under L. 1913, c. 480, § 2 (Mason St. 1927, § 2278), which gross receipts tax was by the provisions of § 2278 expressly stated to be "in lieu of all taxes and assessments upon all taxable property, of said company within this state, * * *." Refund of the franchise tax paid for 1937 is claimed on the ground that during that year relator was subject to and paid a gross receipts tax under § 2278 as amended by Ex. Sess. L. 1937, c. 3, § 2, being Mason St. 1940 Supp. § 2278, which gross receipts tax was by the amendment of 1937 expressly stated to be "in lieu of all *ad valorem* taxes upon all taxable property of said company within this state, * * *."

It is urged by relator that the franchise tax which it was thus compelled to pay for the years 1934, 1936, and 1937 is in fact an ad valorem property tax and therefore could not properly be imposed upon and collected from relator inasmuch as during those years relator was subject to and paid the gross receipts tax above referred to, which gross receipts tax was also a property tax, which by its terms was an exclusive tax upon the entire property of relator within the state, including relator's franchise. If relator is correct in its contention that the franchise tax is an ad valorem property tax and that the gross receipts tax, under the gross receipts tax act prior to its amendment in 1937, was in fact a tax to be imposed "in lieu of all taxes and assessments upon all tax-

able property, of said company within this state," and that from and after the amendment of 1937 such gross receipts tax was in fact, as stated in the amendment, "in lieu of all *ad valorem* taxes upon all taxable property of said company within this state," then, clearly, it should prevail in these proceedings. If, on the other hand, as is contended by the state, the franchise tax is not an ad valorem property tax, but an excise tax, then such franchise tax may properly be imposed upon and collected from relator.

It is therefore necessary to decision here that we determine the character of the taxes involved—whether the franchise tax is an ad valorem property tax or an excise tax, and whether the gross receipts tax, both before and after the 1937 amendment thereto, is a property tax to be imposed on the entire property of relator in the state exclusive of all other taxes.

■ We will first consider the character of the franchise tax imposed by L. 1933, c. 405, § 2, which tax relator here contends is an ad valorem property tax and therefore not properly imposed upon and collectible from relator. Section 2 provided for the imposition upon every domestic and foreign corporation of an annual tax for the privilege of existing as a corporation or of transacting any local business within the state during any part of its taxable year, such tax to be measured by the corporation's taxable net income for the year, to. be computed in the manner and at the rates specified in the act. Subsequent modifications of the act have not changed the material provisions thereof.

This court has heretofore had the foregoing section before it for consideration, and in the course of such consideration it designated the tax imposed by such enactment as a property tax rather than an excise tax. We call attention to Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266 N. W. 690, and State v. Duluth, Missabe & Northern Ry. Co. 207 Minn. 618, 623, 292 N. W. 401, 404. In the latter case, the court said in the course of its opinion:

"The tax imposed upon a corporation by c. 405, § 2, is described by the legislature in that section as a tax 'for the privilege of existing as a corporation or of transacting any local business within

this state during any part of its taxable year, measured by its taxable net income for such year.'

"Is this a property tax upon the franchise? If so, then it is a tax upon a subject covered by the gross earnings tax and is invalid without a vote of the people to approve it. The state contends that it is an excise tax, and presents an elaborate and learned argument to that effect. We think, however, that the question is completely and conclusively answered in favor of defendants by the decision of this court in the case of Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266 N. W. 690. The question there presented was whether the corporate excess tax provided for in 1 Mason Minn. St. 1927, § 2021, was superseded and repealed by implication by various tax statutes subsequently enacted. A part of the problem there confronting the court was adjudication of the character of the tax imposed by c. 405, § 2. We there held that both the good will and franchises, as property, are included within the expressed subject of c. 405, § 2, which for convenience is referred to as the income tax law. This holding was addressed to the merits of the question then before this court. Other cases might be cited, but we deem the Bemis case conclusive on this point.

"Like the gross earnings tax law, c. 405, § 2, is a tax upon property measured by the net taxable income of the corporation. *By its terms the section makes the tax a property tax and not an excise tax.*" (Italics supplied.)

That a franchise is property and taxable as such was the view of this court long before the Bemis and the Duluth, Missabe cases were decided. In State v. Duluth G. & W. Co. 76 Minn. 96, 103, 78 N. W. 1032, 1033, 57 L. R. A. 63, Mr. Justice Mitchell stated in the course of the court's opinion:

"* * * It is well settled that these franchises, although neither visible nor tangible, are property which may be taxed the same as any other property."

Nor is there anything novel or unique in holding, as this court has heretofore done, that the franchise tax here involved is a property tax.

"* * * It is held with practical unanimity that the franchise is property and may be taxed as such. Whenever a corporation is legally formed, the right to exist as a corporation and to perform the functions named in the charter, even if they are such as may be performed by individuals without any grant from the state, is a franchise which may be taxed as property, * * *." 26 R. C. L., Taxation, § 138.

At an early day the United States Supreme Court said in the case of Wilmington Railroad v. Reid, 80 U. S. (13 Wall.) 264, 268, 20 L. ed. 568, 570:

"It is insisted, however, that the tax on the franchise is something entirely distinct from the property of the corporation, and that the legislature, therefore, was not inhibited from taxing it. This position is equally unsound with the others taken in this case. Nothing is better settled than that the franchise of a private corporation—which in its application to a railroad is the privilege of running it and taking fare and freight—is property, and of the most valuable kind, * * *."

There appearing to be no impelling considerations of justice requiring a departure therefrom, we adhere to the past decisions of this court and hold that the franchise tax here involved is a property tax. The fact that such view, long ago adopted by this court, may now be a minority view is not of itself sufficient reason for reversing decisions which adopted a rule that has here long been accepted and followed.

Inasmuch as the gross receipts tax act by its 1937 amendment provided that the gross receipts tax was "in lieu of all *ad valorem* taxes upon all taxable property of said company within this state," we will next consider whether the franchise tax here imposed is in fact an ad valorem (according to value) tax.

The fact that the tax imposed is, according to the terms of the franchise tax act (L. 1933, c. 405, § 2), to be "measured by its [such corporation's] taxable net income for such year" for which the tax is imposed is persuasively indicative of a legislative intent to base

such tax upon the *value* of the franchise, thereby making it an ad valorem tax, for it is obvious that the value of a franchise is largely determined by the profitableness of the use of such franchise. Here, the legislature deliberately chose one of the most dependable methods of measuring the value of the franchise and provided that the tax to be imposed should be arrived at by such method of measurement.

In the light of the foregoing considerations and for reasons further appearing in the decisions hereinafter referred to in paragraph 2 of this opinion, we hold that the franchise tax is an ad valorem property tax.

■ We now come to the second question here involved, the answer to which is essential to the determination of the matter before us. That question is whether the gross receipts tax imposed by L. 1913, c. 480, § 2 (Mason St. 1927, § 2278), prior to and subsequent to its amendment by Ex. Sess. L. 1937, c. 3, § 2, was a property tax upon all property of relator in this state and a tax to be imposed thereon to the exclusion of all other taxes. In the light of the repeated and unequivocal pronouncements of this court on this question over a considerable period of time, we do not hesitate to answer the foregoing question in the affirmative.

As hereinbefore indicated, the gross receipts tax statute as it existed prior to 1937 and since its amendment in that year was and still is § 2278. This section, as it existed prior to its amendment in 1937, imposed a tax equal to five percent of the gross earnings of sleeping car companies such as relator, the statute expressly stating that the tax thus imposed was "in lieu of all taxes and assessments upon all taxable property" of said company within the state. After the amendment of 1937, the statute expressly stated that the tax was "in lieu of all *ad valorem* taxes upon all taxable property of said company within this state." Attention is again called to this fact, inasmuch as that section, prior to its amendment in 1937, was the law in effect during the time of the imposition of the franchise taxes for the years 1934 and 1936, for which refund is here being sought, and the law of 1937, after its amendment, was the law in effect at the time of the imposition of the 1937 tax, for which re-

fund is also here sought. It must next be determined whether the gross receipts tax, as it existed both before and after the amendment of 1937, was and is a tax to be imposed in lieu of all other taxes of the company involved for the years 1934 and 1936 so as to exclude the franchise tax sought to be imposed for those years, and whether it excluded such tax in 1937, when the provisions of the gross receipts tax act provided that they were "in lieu of all *ad valorem* taxes."

This court has heretofore clearly indicated that the phrase "in lieu of all taxes and assessments upon all taxable property, of said company within this state," as contained in L. 1913, c. 480, § 2 (Mason St. 1927, § 2278), prior to its amendment in 1937, meant that it is a property tax to be imposed to the exclusion of all other taxes. This court, in State v. Duluth, Missabe & Northern Ry. Co. 207 Minn. 618, 292 N. W. 401, *supra,* considered the nature of the franchise tax which we now have before us. In that case, this court, after stating that the tax paid under the railroad gross receipts tax act constituted a property tax on the franchise and all other tangible and intangible property used for railroad purposes, reaffirmed its decision in Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266 N. W. 690, *supra,* which had held that the tax imposed by L. 1933, c. 405, § 2, is a property tax imposed only on the single item of corporate franchise and good will, which was previously taxed by Mason St. 1927, § 2021, and, after holding that a railroad franchise as property for the purposes of taxation is divisible, the court held that that part of the franchise used for railroad purposes was not subject to the property tax imposed by L. 1933, c. 405, § 2, under the name of a franchise tax, because as to the part of the franchise used for railroad purposes the gross receipts tax was exclusive, inasmuch as the part of the franchise used for railroad purposes had been withdrawn and exempted from ordinary ad valorem taxation and was included in that particular class of property which was classified and subjected to ad valorem taxation under the railroad gross receipts tax act, which valued as a unit every item of property used for railroad purposes.

This court said in the course of its opinion in that case (207 Minn. 623, 292 N. W. 404):

"Like the gross earnings tax law, c. 405, § 2, is a tax upon property measured by the net taxable income of the corporation. By its terms the section makes the tax a property tax and not an excise tax. We therefore hold that the tax imposed by c. 405, § 2, is a tax upon property already taxed under the gross earnings tax and hence as applied to railroad corporations is invalid as to franchises insofar as they are exercised for railroad purposes.

"Earnings from any source other than ownership or operation for a railroad purpose are not included in the gross earnings tax measure. Any property owned by the railroad, but used for a nonrailroad purpose, is subject to ordinary *ad valorem* property taxation. * * * If a railroad exercise its corporate franchise for railroad purposes and also for nonrailroad purposes, that part of its exercise for nonrailroad purposes cannot escape taxation. It follows that railroads may not be subject to the franchise tax imposed by c. 405 measured by income from railroad ownership or operation because for such exercise of the franchise the gross earnings tax is exclusive, but that they are subject thereto insofar as the franchise is exercised, whether *ultra vires* or not, for other than railroad purposes. That part of the franchise so exercised is as separable, as much subject to ordinary taxes, as is any nonrailroad property. The purpose of the legislature in not listing railroads among the exempt must have been to assure taxation of any income not attributable to railroad ownership or operation."

It seems clear that, inasmuch as the court there held that the nonrailroad franchise was subject to ordinary ad valorem property taxation and as c. 405 was the only general law imposing taxes on that class of property, it must follow that the nonrailroad franchise is subject to taxation under that act. Accordingly, it becomes apparent that this court then, as we have here done, considered the franchise tax as an ad valorem property tax. Relator, therefore, is exempt from such tax by the clear statement of L. 1913, c. 480, § 2

(Mason St. 1927, § 2278), both before and after its amendment in 1937, for prior to 1937 it exempted all taxes, ad valorem or otherwise, and the amendment of 1937 exempted ad valorem taxes, in which classification the franchise tax falls. In State v. C. R. I. & P. Ry. Co. 181 Minn. 615, 620, 232 N. W. 105, 107, in referring to the effect of the railroad gross receipts tax act and the sleeping car gross receipts tax act as it existed prior to its amendment in 1937, this court said:

"* * * When the railroad company paid the gross earnings tax upon all its gross earnings, * * * and the Pullman Company paid the gross earnings tax upon all its earnings, * * * the state then had received full payment of taxes for the period covered, upon all the property, both of the railroad company and the Pullman Company, subject to taxation in this state."

The court in that case had under consideration the question of attempted imposition under another act of a second or additional tax measured by a segregated portion of the earnings from the property already taxed under the sleeping car gross receipts tax act, and said relative thereto (181 Minn. 623, 232 N. W. 108):

"* * * now to exact a second payment would result in double taxation, which is not permissible under our laws and the decisions of this court. We have not overlooked the decisions cited from a few other jurisdictions where double taxation in matters of this kind has been permitted, but deem the rule well established in this state to the contrary."

Bearing directly upon the question before us is the language of the Supreme Court of the United States in the case of Wright v. Georgia R. & B. Co. 216 U. S. 420, 432, 30 S. Ct. 242, 246, 247, 54 L. ed. 544, 556, where the court said in the course of its opinion:

"* * * A tax upon earnings is a tax which at least covers and includes, unless double taxation is intended, all property necessarily held and used to make that income, including the enjoyment of its franchises. * * *

\* \* \* \* \*

"If we are right in construing the tax as one upon net income as a substitute for a property tax, the franchise may no more be taxed than any other property appropriate to the operation of the road. When the State gave up the right to levy and collect a property tax and to take in substitution a tax upon the annual net profit, it gave up the right to tax the franchise of the company as certainly as it gave up the right to tax its railroad."

It should be noted that the only distinction between the tax thus considered by the United States Supreme Court in the above case and the gross earnings tax in Minnesota sought to be applied to relator is that in Minnesota the property tax on the entire property is measured by gross earnings, whereas in Georgia the property tax on the entire property was measured by net income.

We invite attention to the case of Railway Express Agency, Inc. v. Holm, 180 Minn. 268, 230 N. W. 815, which involved the express companies gross receipts tax act. It is, however, of persuasive force here, by reason of the fact that the express companies gross receipts tax act (Mason St. 1927, § 2268) provided that the tax there imposed was "in full and in lieu of all taxes and assessments upon its property." In that case, the taxing authorities of Minnesota had attempted to levy a separate tax on the motor vehicles owned and operated by the Railway Express Agency. In holding such assessment invalid on the ground that the property tax paid by the express agency under the gross receipts tax act was in lieu of all property taxes on all its property, including its motor vehicles, this court said (180 Minn. 271, 230 N. W. 816):

"Our conception of the gross earnings tax is that it is aimed at the business to which it is applicable considered as a whole and embracing all property used therein. We think of this commuted tax as applicable to a going concern and as covering the whole thereof. That thought seems to run through our decisions. County of Ramsey v. C. M. & St. P. Ry. Co. 33 Minn. 537, 24 N. W. 313; County of Todd v. St. P. M. & M. Ry. Co. 38 Minn. 163, 36 N. W. 109; City of St. Paul v. St. P. M. & M. Ry. Co. 39 Minn. 112, 38 N.

W. 925; State v. N. W. Tel. Exch. Co. 84 Minn. 459, 87 N. W. 1131; State v. Twin City Tel. Co. 104 Minn. 270, 116 N. W. 835; State v. N. W. Tel. Exch. Co. 107 Minn. 390, 120 N. W. 534; State v. Cudahy Packing Co. 129 Minn. 30, 151 N. W. 410; State v. Wells Fargo & Co. 146 Minn. 444, 179 N. W. 221. See also Hopkins v. Southern California Tel. Co. 275 U. S. 393, 48 S. Ct. 180, 72 L. ed. 329.

"The gross earnings tax is inconsistent with any other form of taxation. Wright v. Georgia R. & B. Co. 216 U. S. 420, 30 S. Ct. 242, 54 L. ed. 544; Stearns v. Minnesota, 179 U. S. 223, 21 S. Ct. 73, 45 L. ed. 162; Hopkins v. Southern California Tel. Co. 275 U. S. 393, 48 S. Ct. 180, 72 L. ed. 329. Indeed, it seems to us that the unity of purpose is the foundation for the imposition of such commuted tax. Some of plaintiff's authorities rest upon a question of statutory or contract construction. The state claims this distinguishes such authorities and that they should not be controlling on the present question. But upon principle and reason we believe such tax always contemplated all property used in the particular business."

It seems to us that it would be unwarranted and inexplicable inconsistency to hold that the ruling and reasoning applied in the Railway Express Agency case which we have quoted is not applicable to the case at bar.

It is true that subsequent to this court's decision in the Railway Express Agency case our constitution was amended (art. 16, § 3) so as to permit taxation of motor vehicles used on public highways and streets of the state on a more drastic and onerous basis than applied to other personal property. Under such constitutional authorization, a statute was passed to make the power thus conferred effective. It is for that reason that in the subsequent case of State v. Railway Express Agency, Inc. 210 Minn. 556, 299 N. W. 657, the court held that the gross earnings tax payment by the express company was in full and in lieu of all taxes and assessments upon its property except the motor vehicle tax. In such case, however, the court also said (210 Minn. 565, 299 N. W. 661):

"* * * It is settled beyond argument that the gross earnings taxes on railroads and express companies are not taxes upon the

earnings of the companies, or upon the companies, or their franchises, but are taxes upon the property of the companies within the state which are measured by their gross earnings. State v. U. S. Exp. Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A. (N.S.) 1127, affirmed, 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459. (See criticism of the rule in Blakey, Taxation in Minnesota, p. 326.)

"A tax on a railroad's property measured by a percentage of its gross earnings is not the same as a tax on the earnings themselves. The former is a property tax. A tax on a railroad's earnings as such is an income tax, which is unconstitutional since the property tax measured by a percentage of the gross earnings is, under the constitution, in lieu of *all* taxes against a railroad. State v. D. M. & N. Ry. Co. 207 Minn. 618, 292 N. W. 401. For like reasons, the receipts or earnings of an express company are not taxable as such, since under § 2268 the payment of the gross earnings tax by an express company is in full and in lieu of all taxes and assessments upon its property, except the motor vehicle tax under 3 Mason Minn. St. 1940 Supp. §§ 2672-2674, enacted pursuant to authorization under Minn. Const. art. 16, § 3, as amended in 1932, which tax we recently sustained in State ex rel. Ry. Exp. Agency, Inc. v. Holm, 209 Minn. 9, 295 N. W. 297. State v. U. S. Exp. Co. *supra*. The freight receipts in question were not taxed as such. Neither the railroad nor defendant paid a tax on such receipts. Hence the payment of the railroad gross earnings tax did not cover all taxes on the receipts from the entire freight movement as to both the railroads and defendant."

It should be especially noted here that in disposing of the foregoing case the court held that the payment of the 1938 property taxes under the express companies gross receipts tax act subsequent to the "in lieu" amendment to the act in 1937 was "in full and in lieu of all taxes and assessments upon its property, except the motor vehicle tax * * *." The court surely was conscious of the amendment in 1937 to the express companies gross receipts tax act, providing that the tax paid thereunder was "in lieu of all *ad valorem* taxes upon its property," and that express companies were not specifically

excepted from the provisions of the franchise tax act passed as it was in 1933. By holding that the tax paid for 1938 was in lieu of all taxes and assessments upon its property, it is obvious that, as in previous holdings prior to the 1937 amendment, the tax paid under the express companies gross receipts tax act was exclusive of any other ordinary taxes upon any item of the company's property, ad valorem or otherwise. Had the court not considered the tax imposed under the franchise tax act to be an ad valorem property tax and as such included in the "in lieu" provisions of the gross receipts tax payment there under consideration, there is great likelihood that this court in its opinion would have so definitely stated.

■ It appearing that the franchise tax act is an ad valorem property tax, that the franchise of relator is taxed as property under the gross receipts tax act, and that such gross receipts taxes are in lieu of all other property taxes, we must and do hold that the tax imposed upon relator through the franchise tax act is invalid as double taxation, and that the imposition of such franchise tax is also objectionable as being in contravention of Minn. Const. art. 9, § 1, that "Taxes shall be uniform upon the same class of subjects, * * *."

The orders of the board of tax appeals here involved are reversed and remanded with directions to order the refunds here sought.

So ordered.

MAGNEY, JUSTICE (dissenting).

The question here is whether relator is exempt, under Mason St. 1927, § 2278, as to taxes paid for the years 1934 and 1936, from the provisions of § 2 of the franchise tax act (L. 1933, c. 405), and whether it is exempt under the same act as amended by Ex. Sess. L. 1937, c. 3, as to tax so paid for the year 1937, from the provisions of the said franchise tax act.

Prior to 1906, the constitution of Minnesota provided for the taxation of sleeping car companies in the form of a gross receipts tax. Minn. Const. art. 9, § 17. The so-called "wide open" tax amendment of 1906 repealed art. 9, § 17. There remained, then, in the constitution no provision for the imposition of a gross earnings tax on sleep-

ing car companies. This court, however, in State v. Wells Fargo & Co. 146 Minn. 444, 454, 179 N. W. 221, 222, held:

"* * * The power to tax property in this manner is, in our opinion, inherent in the state, unless some constitutional provision deprives the state of the power. Before the adoption of the amendment of 1906, the provision of section 1, art. 9, that all taxes 'shall be as nearly equal as may be' restricted the taxing power of the legislature, and it was deemed necessary to adopt section 17 in order to preserve the right of imposing this form of taxation. But the amendment of 1906, providing that 'taxes shall be uniform upon the same class of subjects' is, in our opinion, broad enough to permit the taxation of express companies in a class by themselves, and by this form of taxation. Section 17 was omitted from the amendment of 1906 because no longer necessary."

The above case involved the taxation of express companies on a gross receipts basis, but of course it applies equally to sleeping car companies.

Mason St. 1927, § 2277, defines sleeping car companies. Section 2278, which imposes upon them a gross earnings tax, provides that "upon such gross earnings such sleeping car company shall pay into the state treasury of this state, *in lieu of all taxes and assessments upon all taxable property, of said company within this state,* a sum of money equal to five per cent of the gross earnings * * *." This section was amended by Ex. Sess. L. 1937, c. 3, to read "in lieu of all *ad valorem* taxes upon all taxable property of said company within this state * * *." (Amendment indicated by italics.) Relator contends that it has fulfilled all its tax obligations to the state by the payment of a gross receipts tax as provided for in the statutes above set out. The state insists that relator is also subject to the franchise tax imposed by L. 1933, c. 405, § 2, which provides:

"There is hereby imposed on every domestic and foreign corporation an annual tax *for the privilege of existing as a corporation or of transacting any local business within this state* during any part of its taxable year, measured by its taxable net income for such year,

computed in the manner and at the rates hereinafter provided." (Italics supplied.)

Section 5 of the same act exempts certain corporations and organizations from taxation under the act. Relator and other gross earnings taxpayers are not included in this list.

Relator urges that the franchise tax imposed by c. 405, § 2, is a property tax and that the gross earnings tax which it pays is in lieu of all ad valorem taxes upon all its taxable property within the state and thus, also, in lieu of a franchise tax. It therefore becomes necessary at the outset to determine whether such franchise tax is a property tax.

There can be no doubt that a state may impose constitutionally upon a foreign corporation engaged in interstate and intrastate transportation a tax for the privilege of carrying on the intrastate business measured by a percentage of the income therefrom, even though the carrier uses the same instrumentalities and employes in conducting both kinds of commerce and pays a state ad valorem tax on those instrumentalities. Pacific T. & T. Co. v. Tax Comm. 297 U. S. 403, 56 S. Ct. 522, 80 L. ed. 760, 105 A. L. R. 1, and Annotation; Southern Ry. Co. v. Watts, 260 U. S. 519, 43 S. Ct. 192, 67 L. ed. 375; 51 Am. Jur., Taxation, §§ 845 to 853. The two taxes relate to distinct and different subjects. The subject of an ad valorem tax is property, and that of an excise tax is a right or privilege. 51 Am. Jur., Taxation, § 292; 2 Cooley, Taxation (4 ed.) § 849.

In view of the nature of the property of certain corporations, their gross earnings are used as a practical and convenient measure in computing the tax to be levied against them. This tax still remains a property tax. In M. & St. L. R. Co. v. Koerner, 85 Minn. 149, 150, 88 N. W. 430, 431, this court in speaking of the gross earnings tax said:

"It has long been settled by the decisions of this state that the gross earnings tax law was not intended to change the character of the tax, but, for the purpose of certainty, was intended to change the method of computation. The amount required to be paid still

remains a tax upon the railroad property, and not against the corporation." State v. U. S. Express Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A. (N.S.) 1127; Railway Express Agency, Inc. v. Holm, 180 Minn. 268, 271, 230 N. W. 815, 816; State v. M. & St. L. R. Co. 204 Minn. 250, 253, 283 N. W. 244, 245.

And in State v. The Pullman Co. 146 Minn. 458, 460, 179 N. W. 224, this court, speaking of the tax on the property of express and sleeping car companies, said:

"* * * Each statute intends a property tax measured by gross earnings and each is a lieu tax in the sense that while the basis of assessment is different the property is taxed by exacting a contribution based on gross earnings and cannot be further burdened. It is still a property tax."

In State v. Wells Fargo & Co. 146 Minn. 444, 456, 179 N. W. 221, 223, *supra*, this court also discussed the nature of a gross earnings tax as follows:

"A gross earnings tax is not required to be an exact equivalent of the ad valorem tax imposed on other property. If there must be a valuation of the property taxed and an exact comparison of results, then the whole purpose of the gross earnings tax is defeated, for it is usually resorted to because, as to the property involved, it is not practicable to make such a valuation or to impose an ad valorem tax."

In Railway Express Agency, Inc. v. Holm, 180 Minn. 268, 271, 230 N. W. 815, 816, *supra*, the court again said that the gross earnings tax is a property tax, and specifically stated that "It is not an ad valorem tax."

The gross earnings tax is in lieu of property taxes and is in fact a property tax measured by a percentage of gross earnings. But it is important to keep in mind that we have said it is a property tax because it is in lieu of ad valorem taxes on property. As said in State v. Fawkes, 210 Minn. 587, 589, 299 N. W. 666, 667:

"* * * We must always bear in mind that the gross earnings tax is a tax upon property and that the earnings are merely the

convenient yardstick or measure by which that property tax is determined. It is just as much a property tax as if it were assessed *ad valorem."*

Chapter 405, § 2, imposes on domestic and foreign corporations an annual tax "for the privilege of existing as a corporation or of transacting any local business within this state * * * measured by its taxable net income for such year, * * *." The domestic corporation is taxed for the privilege of existing as a corporation, and a foreign corporation, such as relator here, is taxed for the grant of the privilege of transacting local business within the state. Thus, the domestic corporation is taxed for the privilege of "being" and the foreign corporation for the privilege of "doing." The tax on these privileges is measured by the taxable net income of the corporations. I am of the opinion that the franchise tax is clearly not a property, but an excise tax, and that therefore the provisions of Ex. Sess. L. 1937, c. 3, which make the gross earnings tax on sleeping car companies a tax "in lieu of all *ad valorem* taxes" (italics supplied) do not make the imposition of such gross earnings tax a tax in lieu also of the franchise tax provided for in c. 405, § 2.

There can be no objection upon constitutional or other grounds to the imposition of both a gross earnings tax and an excise or privilege tax on a foreign corporation engaged in the sleeping car business within the state, unless the so-called excise or privilege tax is in fact a second property tax, because there is no legal obstacle to the imposition of both taxes, except the proscription against other property taxes (the gross earnings tax is a property tax) upon the taxable property of such companies resulting from the provisions of the statute imposing the gross earnings tax that such companies shall pay such tax in lieu of all taxes upon all their taxable property within the state. Here, that is the basis of the objection to the tax in question.

In Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266 N. W. 690, and State v. Duluth, Missabe & Northern Ry. Co. 207 Minn. 618, 292 N. W. 401, this court held that the franchise tax provided for in L. 1933, c. 405, § 2, was a property tax. This holding is contrary

to the great weight of authority. 2 Cooley, Taxation (4 ed.) §§ 826, 841, 845, 858, 861; 51 Am. Jur., Taxation, §§ 809, 811.

It is the general rule that a franchise tax, such as is provided for in L. 1933, c. 405, § 2, is not a tax on the property of the corporation, but an excise tax upon the privilege to exist as a corporation and the privilege of doing business. Tremont & Suffolk Mills v. City of Lowell, 178 Mass. 469, 59 N. E. 1007; A. J. Tower Co. v. Commonwealth, 223 Mass. 371, 374, 111 N. E. 966, 968; North Jersey St. Ry. Co. v. Jersey City, 73 N. J. L. 481, 63 A. 833; City of Newark v. Tunis, 81 N. J. L. 45, 57, 78 A. 1066, 1071; State ex rel. Marquette Hotel Inv. Co. v. State Tax Comm. 282 Mo. 213, 234, 221 S. W. 721, 726; State v. Pierce Petroleum Corp. 318 Mo. 1020, 1027, 2 S. W. (2d) 790, 794; City of Chicago v. Chicago City Ry. Co. 245 Ill. App. 473; United North & South Development Co. v. Heath (Tex. Civ. App.) 78 S. W. (2d) 650, 652; New York ex rel. United States A. P. P. Co. v. Knight, 174 N. Y. 475, 478, 67 N. E. 65, 66, 63 L. R. A. 87; In re Commercial Safe Deposit Co. 148 Misc. 527, 266 N. Y. S. 626; Educational Films Corp. v. Ward (D. C. N. Y.) 41 F. (2d) 395, 397; Pacific Co. Ltd. v. Johnson, 212 Cal. 148, 298 P. 489, 492; American States Water Service Co. v. Johnson, 31 Cal. App. (2d) 606, 612, 88 P. (2d) 770, 773; State v. Clement Nat. Bank, 84 Vt. 167, 179, 78 A. 944, 949, Ann. Cas. 1912D, 22; Commonwealth v. Columbia G. & E. Corp. 336 Pa. 209, 217-221, 8 A. (2d) 404, 410-411, 131 A. L. R. 927; State v. Pullman-Standard Car Mfg. Co. 235 Ala. 493, 500, 179 So. 541, 546, 117 A. L. R. 498; Hollingsworth & Whitney Co. v. State, 241 Ala. 96, 98, 1 So. (2d) 387, 388; International Paper Co. v. Curry, 243 Ala. 228, 9 So. (2d) 8; Union Steam Pump Sales Co. v. Secretary of State, 216 Mich. 261, 264, 185 N. W. 353, 354; Underwood Typewriter Co. v. Chamberlain, 94 Conn. 47, 55, 108 A. 154, 157; Home Ins. Co. v. New York, 134 U. S. 594, 606, 10 S. Ct. 593, 597, 33 L. ed. 1025, 1031.

As a general rule, it may be asserted that a property tax is one imposed upon property as such or upon the taxpayer because of the ownership of property. Ordinarily, a property tax is measured by the amount of property owned by the taxpayer on a given day and

not by the total amount owned by him during the year. The value of the property is determined by periodical assessments, and the taxes voted are spread against the property in proportion to its value. Liability for the tax does not depend on an act of the taxpayer. It does not arise because of his use or disuse of the property. The exaction is absolute; the liability exists in any event. Also, provision is usually made for sale of the property to enforce the tax. 51 Am. Jur., Taxation, §§ 29-32. See, Standard Clothing Co. v. Wolf, 219 Minn. 128, 17 N. W. (2d) 329. Our statutes relating to property taxes impose them in the manner mentioned. While gross earnings taxes imposed in lieu of property taxes at first blush seem to be an exception, they are not so. They are imposed because of the ownership of property. Because the percentage of the gross earnings is deemed to be an approximation of ad valorem taxes, it has been adopted as a convenient measure of the tax.

On the other hand, an excise tax is not assessed against particular property. An excise tax is one imposed on the performance of an act, the enjoyment of a privilege, the engaging in an occupation, or upon the manufacture, sale, or consumption of commodities. Ordinarily, it is imposed directly by the legislature without assessment of the subjects involved and is measured by the amount of business done, the value of the privilege, or by a sum fixed by the legislature itself. In most cases, the voluntary activity of the taxpayer with respect to the privilege or the manufacture, sale, or consumption of goods creates liability for the tax. 51 Am. Jur., Taxation, §§ 33-35. As said in § 35:

"An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them and fixing their amounts. If a tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise. Although an excise or privilege tax, like a property tax, is passed to raise revenue, it is to be distinguished from prop-

erty taxation in that it is imposed upon the right to exercise a privilege, and its payment is invariably made a condition to the exercise of the privilege involved."

Here, the tax is imposed upon the exercise of a privilege, not the ownership of property. It is imposed directly by the statute without assessment and without regard to the value of the instrumentalities employed by the taxpayer in the exercise of the privilege. Liability for the tax is *in personam* and can arise only from the voluntary activity of the taxpayer in exercising the privilege with respect to which the tax is imposed. If no local business is transacted, there is no tax. If local business is transacted, there is a tax, the amount of which depends upon the amount of business transacted. In Security Sav. & Com. Bank v. District of Columbia, 51 App. D. C. 316, 317, 279 F. 185, 186, where it was held that a tax upon incorporated savings banks measured by a percentage of their gross earnings for the privilege of doing business within the District of Columbia was a franchise or excise and not a property tax, the court said:

"It will be observed that the paragraph we are considering imposes upon the corporation the duty of paying the tax, and provides that the amount shall be determined by the sum of the gross earnings. If there are no earnings, there will be no tax, no matter how much property the corporation may own, and there will be no earnings unless business is done. The amount of the tax fluctuates with the quantity of business transacted, and is measured by it. This indicates an intention to tax the doing of business, and not the property; hence the tax is a franchise tax. Thus reasons the Supreme Court of the United States in the decisions just referred to.

"In the Spreckels Case [192 U. S. 397, 411, 24 S. Ct. 376, 380, 48 L. ed. 496, 501] we find this language:

"*'Clearly the tax is not imposed upon gross annual receipts as property, but only in respect of the carrying on or doing the business of refining sugar.* It cannot be otherwise regarded because of the fact that the amount of the tax is measured by the amount of the gross annual receipts.' [Italics supplied.]

"Here the tax is measured by the amount of the gross earnings."

In 51 Am. Jur., Taxation, § 809, the writer of the text, in discussing the taxes upon the franchise of corporations, makes this statement:

"Although franchise taxes have been defined as 'a tax upon the privilege of doing business under corporate organization,' taxes upon the franchise of corporations fall into at least five different classes: (1) organization taxes, or fees exacted of domestic corporations for the grant of corporate powers; (2) excises levied periodically, usually annually, upon the franchise of domestic corporations; (3) excises charged foreign corporations for the privilege of entering and doing business within the state; (4) excises upon special privileges enjoyed by particular corporations; and (5) ad valorem taxes on franchises as property. These taxes are not necessarily alternative, but may be concurrent. Thus, a property tax may be imposed on a corporate franchise, and an excise may also be imposed on the right to incorporate in the first instance and annually thereafter as the right to continue corporate existence. * * * There may, however, be such a thing as a double taxation of corporate franchises which will offend constitutional principles."

The franchise tax under c. 405, § 2, is clearly not an organization tax or fee exacted of domestic corporations for the grant of corporate power, as set out in (1) of the above classification, nor is it an excise upon special privileges as set out in (4) of the above classification, nor an ad valorem tax on franchises as property set out in (5). The taxes provided for in c. 405 come within (2) "excises levied periodically, usually annually, upon the franchise of domestic corporations" and (3) "excises charged foreign corporations for the privilege of entering and doing business within the state."

In 2 Cooley, Taxation (4 ed.) § 824, it is stated that taxes on franchises are divisible into (a) excises and (b) property taxes. And in § 826 the writer discusses the distinction between these two taxes in the following language:

"The term 'franchise tax,' as generally used, has no definite legal meaning. It may mean either an excise or a property tax. Generally, however, the term is used as meaning an excise, as distinguished from a property tax, imposed on franchises and consisting of a more or less arbitrary sum having little or no connection with the actual value, although such a tax, even when an excise, is often measured, at least to some extent, by the amount of property or earnings of the corporation. At the same time, a tax on a franchise or franchises of a corporation, as property, and imposed according to the rules relating to taxation of property rather than those governing excise taxes, is sometimes referred to as a 'franchise tax.'"

And in § 837 it is said:

"The term 'excise tax,' as used herein, means a privilege tax as distinguished from a property tax. A franchise tax may take the form of an excise or the form of a property tax. * * * and it is sometimes difficult to determine whether a tax on corporate franchises is an excise or a property tax. * * * So-called franchise taxes are generally held to be an excise tax rather than a property tax, * * *."

Continuing, in § 841 it is stated:

"A tax imposed on a foreign corporation for the privilege of doing business in the state is an excise and not a property tax, although the amount thereof is measured by the capital stock, property in the state, earnings, dividends or the like."

In 18 Minn. L. Rev. 93, 94, Prof. Henry Rottschaefer in discussing the then recently enacted state income tax statute says:

"The statute imposes two types of tax that are quite distinct in their legal character. That imposed on corporations by section 2 is a privilege tax measured for any given taxable year by the taxable net income for such year. The tax in the case of a Minnesota corporation is on the privilege of existing as a corporation during any part of the taxable year. This state cannot tax a foreign corporation on that privilege since such corporation does not derive that

privilege from it. The tax on it is for the privilege, derived from this state, of transacting within it any local business during any part of a taxable year."

Although the franchise tax act itself (c. 405) does not state whether the tax being imposed is a property tax or an excise, its wording clearly favors an interpretation that it is an excise. It reads (§ 2):

*"There is hereby imposed* on every domestic and foreign corporation an annual *tax for the privilege* of existing as a corporation or of transacting any local business within the state * * *." (Italics supplied.)

The tax for the privilege is measured by its taxable net income.

If my impression is correct that the tax imposed by L. 1933, c. 405, § 2, is an excise tax and not a property tax, then, naturally it would follow that insofar as this view contravenes what was said by this court in Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266 N. W. 690, and State v. Duluth, Missabe & Northern Ry. Co. 207 Minn. 618, 292 N. W. 401, these cases should be overruled.

The case of State v. Duluth G. & W. Co. 76 Minn. 96, 78 N. W. 1032, 57 L. R. A. 63, *supra*, is not in point. That case does not hold that a tax upon a foreign corporation's privilege of exercising a corporate franchise measured by income from local business, as here, is a property or any other particular sort of tax, for the obvious reason that no such question was there involved. Nor did the court, for the same reasons, decide whether a tax upon the privilege of exercising a corporate franchise was generically a property or excise tax. On the contrary, the only question there involved was whether what unquestionably was a separate ad valorem property tax on a corporate franchise was double taxation because of the fact that the franchise had been taxed already as part of the personal property of the corporation by being included in the value of its intangibles. The corporations there involved were taxed on their personal property under G. S. 1894, § 1530, which provided a procedure for reaching for tax purposes all tangible and intangible

property of a corporation, including its franchises. *Id.* § 1524, provided for the taxation of franchises as such as personal property. With some amendments not here material, these sections now are respectively Minn. St. 1945, §§ 273.51 and 273.49 (Mason St. 1927, §§ 2021 and 2019). They relate to the assessment of personal property for purposes of ad valorem taxation. They have nothing to do with excise taxes on either corporations or their franchises. The question for decision was not whether a tax upon the privilege of exercising a corporate franchise was a property or an excise tax, but rather whether, since the franchises of the corporations were taxed once under § 1530 as personal property upon an ad valorem basis, the legislative intent was to tax the franchises a second time under § 1524 by an ad valorem tax on them separately as personal property. The gist of the decision on this point is found in the following language (76 Minn. 104, 78 N. W. 1033, 57 L. R. A. 70) :

"* * * It would be wholly unreasonable to assume that the legislature would adopt the scheme of reaching the franchises and other intangible property of a corporation through the taxation of its capital stock, and at the same time turn around and specifically tax as a separate item of personal property, and deduct from the value of the stock, the very intangible property which they were endeavoring to reach through the taxation of the stock. Sections 1524 and 1530 must be read and construed together; and, doing so, the fourteenth subdivision of the former section, providing for listing and assessing franchises as a specific and separate item of personal property, was intended to apply only to franchises owned by private persons or others not falling within the provisions of section 1530."

While the court held that franchises are intangible property and may be taxed as such (76 Minn. 103, 78 N. W. 1033, 57 L. R. A. 69), it was not decided that an excise could not be laid on the exercise of a corporate franchise. In fact, while the able and distinguished counsel for defendants contended that the corporate franchises could not be taxed separately as property, they conceded that a

valid excise could be imposed upon them. Counsel said (76 Minn. 99, 78 N. W. 1033) : "A franchise tax in the nature of an excise tax may *undoubtedly* be laid." (Italics supplied.) Of course, counsel conceded only what is the correct rule of law. There is nothing in the decision to the contrary. It would be unthinkable that the court should decide a question not before it, and then not only contrary to well-established rules of law, but what was conceded upon the argument to be such.

Of course, corporate franchises may be taxed as property. Likewise, an excise tax may be imposed for the privilege of exercising a corporate franchise. Whether a particular tax is a property or excise tax depends on whether it is imposed on the franchise as property or upon the privilege of exercising the franchise. The fact, as here, that the tax is not computed upon the franchise as property based upon a valuation thereof, but in terms is imposed upon the exercise of the franchise and is measured by the business done, shows that the tax is an excise and not a property tax. 51 Am. Jur., Taxation, §§ 31-35, 808-811. The instant tax is therefore clearly an excise.

Relator is taxed under the provisions of a gross earnings tax. If the tax provided for in c. 405 is an excise tax, it is again being taxed, but not on the same property. There is here no double taxation. In 51 Am. Jur., Taxation, § 292, it is stated:

"The principle that the imposition of both an excise tax on a privilege, activity, occupation, or calling and an ad valorem tax on property used in the exercise, conduct, or performance of such calling, privilege, or activity is not invalid as double taxation is generally recognized. The principle is bottomed on the theory that the subject of ad valorem taxation is property and that of excise taxation is a right or privilege, and that consequently, the requirement frequently made essential to the existence of double taxation in the unconstitutional sense, namely, that both impositions must be against the same taxable subject, is lacking."

And in § 294:

"* * * it does not constitute unlawful duplicate taxation to impose taxes simultaneously * * * on the corporate property and the franchise to exist or act as a corporation * * *."

In 2 Cooley, Taxation (4 ed.) § 849, the author states:

"* * * The importance of determining whether a franchise tax is a property tax or an excise tax also relates to the rules governing so-called double taxation, since there is no double taxation where one tax is a property tax and the other is an excise tax."

As it is my opinion that L. 1933, c. 405, § 2, imposes an excise tax and that double taxation does not result from the imposition of such a tax, although relator is subject to the gross earnings tax, I respectfully dissent.

PETERSON, JUSTICE, and MATSON, JUSTICE (dissenting).
We concur in the dissent.