SOO LINE RAILROAD
COMPANY, Relator,

v.

The COMMISSIONER OF
REVENUE, Respondent.

No. C0–84–1416.

Supreme Court of Minnesota.

Nov. 22, 1985.

Michael M. Mullins, Soo Line R. Co., Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., C.H. Luther, Deputy Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

## OPINION

WAHL, Justice.

Relator Soo Line Railroad appeals by writ of certiorari from an order of the Tax Court affirming the assessment of the Commissioner of Revenue of additional tax and interest against Soo Line for the years 1975 and 1976 and denying Soo Line's claims for refunds for the same years. We affirm the order of the Tax Court.

During the years in question, Minnesota imposed on railroads both a gross earnings tax, based on railroad operating income derived within the state, and an excise tax, based on net taxable income allocated within the state. Minn.Stat. § 295.02 (1978), *repealed* by Act of June 1, 1979, c. 303, art. 7, § 15, 1979 Minn.Laws 671, 778 (gross earnings tax); Minn.Stat. § 290.02 (1984) (excise tax). While the excise tax applied to all interstate businesses, only railroads were subject to the gross earnings tax. The Soo Line paid a total of $3,043,047 in state tax in 1975, of which $2,496,177 was gross earnings tax and $122,375 was excise tax. In 1976, the railroad paid a total of $3,677,328 in state tax, of which $2,852,747 was gross earnings tax and $240,370 was excise tax. The Tax Court found that, had the Soo Line been taxed as any other business, its total tax obligation for 1975 and 1976 would have been $1,698,145 and $1,851,488 respectively.

An audit of the railroad's returns for 1975 and 1976 by the Commissioner of Revenue ("commissioner") revealed that the Soo Line had deviated from the commissioner's computation schedules for calculating its excise tax liability. The commissioner issued an order on November 2, 1982, advising the Soo Line that additional excise tax and interest were due in the amounts of $190,979.37 for 1975 and $256,-043.22 for 1976, reflecting the difference between the Soo Line's adopted method of computation and the method of computation used by the commissioner. The commissioner's audit had been conducted after the Soo Line filed amended returns for 1975 and 1976 claiming refunds due for excise tax paid. By its amended returns, the Soo Line sought to exclude railroad operating income, upon which its gross earnings tax was computed, from its net taxable income, upon which its excise tax is based. The commissioner denied the Soo Line's claims for refunds by the same November notice which assessed additional excise taxes.

The Soo Line appealed the commissioner's order to the Tax Court, claiming that the imposition of both excise and gross earnings tax based on railroad operating income was barred by terms of the statute, the Uniformity Clause of the Minnesota Constitution, federal Due Process guarantees, the Commerce Clause and the federal Railroad Revitalization and Regulatory Reform Act of 1976 ("the 4–R Act"). The railroad also contended that, even if both taxes could be lawfully imposed, the commissioner's apportionment formula allocat-

ing income to Minnesota was both contrary to the statute and unconstitutional under the federal Due Process and Commerce Clauses as applied to it. The Tax Court rejected the railroad's contentions and affirmed the commissioner's order in all respects. The Soo Line raises the same issues before this court.

### I.

 We first address the railroad's claims for refunds. The railroad sought to exclude from excise taxation that portion of its liability based on its railroad operating income, which resulted in claims for refunds of $111,108 for 1975 and $219,587 in 1976. Its liability for excise tax arose under the following provision:

An annual excise tax is hereby imposed upon every domestic corporation * * * for the grant to it of the privilege of transacting or for the actual transaction by it of any local business within this state during any part of its taxable year, in corporate or organized form.

Minn.Stat. § 290.02 (1984). The tax levied by this provision has consistently been held to be a franchise tax. *Reuben L. Anderson-Cherne v. Commissioner of Taxation*, 303 Minn. 124, 226 N.W.2d 611 (1975) *appeal dismissed*, 423 U.S. 886, 96 S.Ct. 181, 46 L.Ed.2d 118 (1975); *e.g., Pullman Co. v. Commissioner of Taxation*, 223 Minn. 96, 25 N.W.2d 838 (1947). The Soo Line argues that imposition of the excise tax, to the extent that it is based on railroad operating income, is barred by the language governing the Soo Line's liability for gross earnings tax.

The provision giving rise to the railroad's gross earnings tax liability states in relevant part:

Every railroad company owning or operating any line of railroad situated within * * * this state shall, annually, pay to the commissioner of revenue, *in lieu of all taxes upon all property within this state owned or operated for railway purposes* by such company, *including* equipment, appurtenances, appendages and *franchises thereof,* a sum of money

equal to five percent of the gross earnings derived from the operation of such line of railway within this state.

Minn.Stat. § 295.02 (1978), *repealed* by Act of June 1, 1979, ch. 303, art. 7, § 5 1979 Minn.Laws 671, 778 (emphasis added). The Soo Line contends that because the gross earnings tax stands "in lieu of all taxes upon all property * * * operated for railway purposes," including franchises, and the excise tax is a franchise tax, the gross earnings tax precludes liability for excise tax to the extent the excise tax is based on railroad operating income.

The Soo Line's argument would be persuasive if it were the property of the franchise that is taxed pursuant to the excise tax. Only taxes on property are displaced by the gross earnings tax. The incident of the franchise taxed under the excise tax, however, is the privilege of carrying on business, not the property of the franchise. *Reuben L. Anderson-Cherne*, 303 Minn. at 129, 226 N.W.2d at 614–15. The railroad relies on three cases decided by this court, *State v. Duluth, Missabe & Northern Railway Co.* 207 Minn. 618, 292 N.W. 401 (1939), *appeal dismissed,* 311 U.S. 719, 61 S.Ct. 439, 85 L.Ed. 468 (1941); *Pullman Co. v. Commissioner of Taxation*, 223 Minn. 96, 25 N.W.2d 838 (1947); and *Western Union Telegraph Co. v. Spaeth*, 232 Minn. 128, 44 N.W.2d 440 (1950), for the proposition that a franchise tax is necessarily a tax on the property of the franchise. This reliance is misplaced. While these cases do hold that the tax imposed under section 290.02 is a tax on the property of the franchise, they construed the statute prior to 1947. In 1947, the legislature amended section 290.02 to provide that the tax was an excise tax, *see Spaeth,* 232 Minn. at 133, 44 N.W.2d at 442, and not a property tax. *See Reuben L. Anderson-Cherne,* 303 Minn. at 129, 226 N.W.2d at 614. We therefore find the Soo Line's statutory argument unpersuasive.

 The taxpayer has also raised state and federal constitutional challenges to the imposition of both excise and gross earn-

ings taxes based on operating income.[1] We find no constitutional infirmities here. The taxpayer's principal contention is that imposing both taxes constitutes unconstitutional double taxation in violation of the Uniformity Clause of the Minnesota Constitution. Taxing measures violate the uniformity clause when "the same property or person is taxed twice for the same purpose for the same taxing period by the same taxing authority without taxing all property and persons in the same class a second time." *Milwaukee Motor Transportation Co. v. Commissioner of Taxation,* 292 Minn. 66, 77, 193 N.W.2d 605, 612 (1971). The "same purpose" requirement is not met in this case. It is well settled that the purpose of the gross earnings tax is to "conveniently and efficiently compute a railroads' tax obligation attributable to their ownership of property in the state." *Soo Line Railway Co. v. Commissioner of Revenue,* 277 N.W.2d 7, 9 (Minn.1979), *State v. Minneapolis & St. Louis Railway Co.,* 257 Minn. 124, 100 N.W.2d 669 (1959). While not in a true technical sense a tax on property, this court has held that "the property owned and operated by the railroad is justifiably treated as the subject matter of the tax since it gives rise to the tax liability obligation." *Soo Line Railway Co.,* 277 N.W.2d at 9, *quoting Minneapolis & St. Louis Railway Co.,* 257 Minn. at 129, 100 N.W.2d at 673. As the excise tax is not a property tax, imposing both taxes does not offend the uniformity clause.

Nor does the taxing structure violate federal due process guarantees or the Commerce Clause. Generally, a tax satisfies both constitutional provisions if it does not impermissibly burden interstate commerce, if the state has a sufficient nexus with the taxes activities, and the tax is fairly apportioned to activities within the state. *Complete Auto Transit Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *Moorman Manufacturing Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). The Soo Line concedes that the first two requirements are met here. It contends, however, that imposing both taxes results in unfair apportionment of liability relative to its instate activities. In support of this contention, the Soo Line argues first that its tax liability is not precisely correlated with the extent of its actual presence in the state and second, that it paid substantially more in tax for its instate operations than other interstate industries.

The Soo Line's first argument is essentially a challenge to the constitutionality of the three factor apportionment formula set forth in Minn.Stat. § 290.19 (1984). It is well settled, however, that this formula on its face conforms with due process and commerce clause requirements.[2] *See General Motors Corp. v. District of Columbia,* 380 U.S. 553, 561, 85 S.Ct. 1156, 1161, 14 L.Ed.2d 68 (1965). The Soo Line's second argument, that because it paid more in property tax than other interstate industries the tax must be unfairly apportioned, is essentially an equal protection challenge. The reason why the railroad paid substan-

---

1. This matter was brought in the Tax Court in the first instance and there the Soo Line raised its constitutional objections. That the Tax Court lacks original jurisdiction over constitutional issues was initially decided by this court in *In re McCannel,* 301 N.W.2d 910, 919–20 (Minn.1980) and elaborated in *Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 139 n. 1 (Minn.1980). It was not until our decision in *Erie Mining Co. v. Commissioner of Revenue,* 343 N.W.2d 261 (Minn.1984), however, that we specifically set out the procedure for enforcing the *McCannel* rule. In *Erie Mining,* we said:

 All tax matters over which the tax court has jurisdiction should be filed with the tax court. If any party raises a constitutional issue, the

tax court should stay the proceedings and refer the constitutional question to the district court.

*Id.* at 264. *Erie Mining* was not decided, however, until after briefing was completed in the case before us. Therefore, though the Tax Court did not follow the procedure outlined, we will consider the constitutional issues on the merits.

2. As of 1978, 44 states had adopted similar three factor formula to apportion income to instate activities. *Moorman Manufacturing Co. v. Bair,* 437 U.S. 267, 283–84 n. 1, 98 S.Ct. 2340, 2349 n. 1, 57 L.Ed.2d 197 (1978) (Powell, J., dissenting).

tially more in tax is because the gross earnings tax applied a higher tax rate to railroad property than ad valorem taxes did to other property. An early challenge to the gross earnings tax raised the same objection, and this court held that no federal constitutional guarantee was offended by the fact that the gross earnings tax is not the exact equivalent of the ad valorem tax imposed on other property. *State v. Wells Fargo & Co.*, 146 Minn. 444, 179 N.W. 221 (1920). Because imposition of both gross earnings and excise tax is contrary neither to the statute nor federal or state constitutional requirements, the Tax Court's order affirming the commissioner's denial of the Soo Line's refund claim is therefore affirmed.

## II

■ The commissioner's order for additional excise taxes remains to be considered. The Soo Line contends the commissioner's order for additional tax impermissibly discriminates against railroads in violation of section 306(a) of the federal Railroad Revitalization and Regulatory Reform Act, Pub.L. No. 94–210, § 306, 90 Stat. 31, 54 (1976) (current version at 49 U.S.C. § 11503 (Supp.V 1981) (hereinafter the 4–R Act). The 4–R Act was the culmination of years of congressional investigation of the impact of state taxation of railroads, an investigation that confirmed state and local assessment procedures did, in fact, discriminate against railroads. To provide relief, in section 306 of the Act, the Congress specifically prohibited discrimination against railroads in the imposition of state and local taxes, as follows:

(1) Notwithstanding the provisions of section 202(b), any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce. It is unlawful for a State * * * to commit any of the following prohibited acts:

(a) The assessment * * * for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.

(b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).

(c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part.

The effective date of this section was postponed until February 5, 1979, three years after its enactment. The Soo Line argues that the commissioner's order falls squarely within the statutory prohibition against "the imposition of any other tax which results in discriminatory treatment of a common carrier by railroad." There can be little doubt that the excise tax, coupled with the gross earnings tax, is discriminatory. The issue is simply whether or not the 4–R Act prohibits the collection of the balance of that tax for the years in question. The statute prohibits the "imposition" of any discriminatory tax only as of the effective date, February 5, 1979. The question, then, is whether these additional taxes were "imposed" in 1975 and 1976, the relevant tax years, or in November 1982, the date of the commissioner's order. Resolution of this issue turns on the meaning of the term "imposition" as used in section 306(d).

The term "impose" is not defined in the statute, but "impose" usually means "to cause to be burdened; to make, frame, or apply as compulsory: to levy a tax." Webster's Third New International Dictionary (1976). The use of the term in the context

of a discussion concerning the process of taxation is instructive:

> [Taxation] consists of two distinct processes—the one relating to the levying or imposition of the taxes on persons or property; the other the collection of the taxes levied. The first is constituted of the provisions of law which determine or work out the determination of the persons or property to be taxed, the sum or sums to be thus raised, the rate thereof and the time and manner of levying and receiving and collecting the taxes. It definitely and conclusively establishes the sum to be paid by each person taxed, or to be borne by each property specially assessed, and creates a fixed and certain demand in favor of the state or a subordinate governmental agency, and a definite and positive obligation on the part of those taxed, and prescribes the manner of its voluntary or enforced fulfillment.

*Mayor and City Council of Baltimore v. Perrin*, 178 Md. 101, 12 A.2d 261, 264–65 (1940).

When used in connection with the authority to tax, "levy," strictly speaking, denotes the exercise of a legislative function, which imposes the tax and sets the amount, purpose, and subject of the exaction. *Carkonen v. Williams*, 76 Wash.2d 617, 458 P.2d 280, 286 (1969). *See also Fichtner v. Schiller*, 271 Minn. 263, 135 N.W.2d 877, 879 (1965). In view of the interchangeable use of the terms "impose" and "levy" by the United States Supreme Court, *e.g.*, *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983), we conclude the excise tax was imposed by legislative action, i.e., § 290.02, not by the commissioner's attempt to collect it, and that the imposition was complete not later than the last day of 1975 and 1976 tax years when the Soo Line's excise tax obligation had fully accrued. In short, the 1975 tax was imposed prior to the passage of the 4–R Act and the 1976 tax was imposed long before its effective date, and the Soo Line paid the excise tax due according to its computation when the tax returns were filed in 1976 and 1977.

When an audit disclosed that the Soo Line had incorrectly computed the tax, the commissioner notified the Soo Line of the amount of the deficiencies and the amount of interest due. The notification and demand for payment of the unpaid portion of the 1975 and 1976 taxes was dated November 2, 1982, long after the effective date of the 4–R Act. This notification does not impose of an additional excise tax. An excise tax is measured by income, and the taxpayer is required to file a tax return declaring the amount of income subject to the tax and calculating the tax by application of the proper tax rate. That the taxpayer miscalculates the amount of tax due either because of a mathematical error or because it understated its taxable income does not change the amount of the tax imposed and actually accrued; the taxpayer has simply misstated the amount of the tax. When the commissioner notifies the taxpayer that additional tax is due, the commissioner is not imposing a tax; the commissioner is advising the taxpayer of the amount of the deficiency in the tax payment and the accrued interest on the deficiency. That the interest on the deficiency accrues from the 1976 and 1977 due dates of the 1975 and 1976 excise taxes, respectively, only confirms that the character of the notice of deficiency is a collection device rather than the imposition of a tax. Inasmuch as section 306(b)(4) prohibits only the imposition of a discriminatory excise tax and, unlike the clauses dealing with property taxes, makes no reference to its collection, we hold that collection of the balance of the 1975 and 1976 excise tax, together with interest thereon, does not violate the 4–R Act. Therefore, *Trailer Train Company v. State Board of Equalization*, 697 F.2d 860 (9th Cir.1983) *cert. den.* —— U.S. ——, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983) is inapplicable in this case.

■ The Soo Line contends, however, that even if collection of any unpaid portion of the 1975 and 1976 tax liability is not prohibited by the 4–R Act, the tax computa-

tions on its original tax returns were correct and it has fully paid its tax obligation for those years. We do not agree.

The bulk of the deficiency asserted by the commissioner resulted from the Soo Line's treating the Minnesota gross earnings tax as nonapportionable and deducting it from Minnesota taxable income. The commissioner, on the other hand, contends that pursuant to Minn.Stat. § 290.19 (1982),[3] the gross earnings tax is apportionable and is to be deducted from gross earnings. We agree with the Tax Court that in computing excise tax liability under Minn. Stat. § 290.02, the gross earnings tax paid to the State of Minnesota is to be deducted from the Soo Line's total gross income pursuant to Minn.Stat. § 290.19 (1982) and that the Soo Line's reliance on Minn.Stat. § 290.18 (1982), which is applicable "except insofar as section 290.19 is applicable," is ill founded. Moreover, we conclude that application of the three-factor allocation formula prescribed by Minn.Stat. § 290.19, subd. 1(2)(a) (1982) to the Soo Line's unitary business did not constitute an abuse of discretion. *See Bunge Corp. v. Commissioner of Revenue*, 305 N.W.2d 779, 784–85 (Minn.1981); *Rothschild & Co. v. Commissioner of Taxation*, 270 Minn. 245, 133 N.W.2d 524, 531 (1965).

Accordingly, we hold the Commissioner of Revenue properly assessed additional tax and interest against the Soo Line for the years 1975 and 1976 and affirm the Tax Court's Order.

Affirmed.

---

**3.** Minn.Stat. § 290.19 (1982) provides in relevant part the following allocation of net income to Minnesota: The taxable net income from a trade or business carried on partly within and partly without this state shall be computed by deducting from the gross income of such business, wherever derived, deductions of the kind permitted by section 290.09, so far as connected with or allocable against the production or receipt of such income.