GEORGE H. SELOVER v. FIRST NATIONAL BANK OF MINNEAPOLIS.

June 26, 1899.

Nos. 11,654—(197).

**Evidence.**

Conceding, without deciding, that certain evidence introduced is incompetent, and that it was error to admit it, it was error without prejudice, because the fact sought to be proved by it was conclusively proved by other evidence.

**Bank—Fraud—Estoppel.**

H. fraudulently, and by means of false pretenses, procured a loan from the defendant bank, and requested it to credit the amount to its correspondent bank for his benefit. This defendant did, by notifying the correspondent bank accordingly. Thereupon the latter bank credited the amount on the antecedent debt of H. *Held*, defendant was not by reason thereof estopped, as against the latter bank, from rescinding the loan, and cancelling the credit so extended to the latter bank for the benefit of H.

Appeal by plaintiff from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

*Robert Jamison* and *Douglas A. Fiske*, for appellant.

*Gilfillan, Willard & Willard*, for respondent.

CANTY, J.[1]

During all the time hereinafter stated, prior to February 25, 1895, the defendant, the First National Bank of Minneapolis, Minnesota, was a correspondent of the Merchants' Bank of Lake City, Minnesota, and one Holmes was the president of the latter bank. On February 15, 1895, Holmes borrowed of the defendant bank the

[1] MITCHELL, J., absent.

sum of $4,000, for which sum he then executed his note to that bank, and, as collateral security for the loan, assigned and delivered to that bank 50 shares of the capital stock of the Merchants' Bank, of which stock he was then the owner. Each bank kept an open account with the other, and Holmes directed the defendant bank to credit the account of the Merchants' Bank with the proceeds of the loan, amounting to $3,940. Thereupon, on the same day, the defendant bank wrote the Merchants' Bank as follows: "We credit your account $3,940, proceeds W. F. Holmes note."

Ten days thereafter, on February 25, the attorney general commenced an action to forfeit the charter of the Merchants' Bank on the ground that it had loaned to Holmes, directly and indirectly, over $30,000,—a sum greatly in excess of 15 per cent. of the total amount of the capital stock of that bank. A receiver of the assets of the bank was thereupon appointed, and its doors were closed on that day. In the meantime the credit so given the Merchants' Bank by the defendant bank remained upon the books of both banks, and had not been drawn upon by the Merchants' Bank. On said February 25 the defendant bank notified both Holmes and the Merchants' Bank that defendant had rescinded the loan to Holmes, and cancelled the credit so given to the Merchants' Bank, and defendant then tendered back to Holmes the 50 shares of stock so delivered to it as collateral security. The receiver made no attempt to collect the amount of this credit from defendant, but thereafter, on March 1, 1898, he sold the claim to plaintiff for the sum of $75; and plaintiff brought this action to recover the amount of the claim, to wit, the sum of $3,940, and interest thereon. On the trial the court, sitting without a jury, found for defendant, and from an order denying a new trial plaintiff appeals.

The defense that was interposed is that Holmes obtained the loan from the defendant bank by means of false and fraudulent representations; that at the time of negotiating the loan he represented that the stock so offered as collateral security was worth par, to wit, the sum of $5,000, whereas in fact such stock was wholly worthless, which he then well knew, and made the representations with intent to deceive defendant, who believed the representations, and, relying on them, was induced thereby to make the

loan. To avoid the effect of this defense, the plaintiff claims that, on the faith of the credit so given by defendant to the Merchants' Bank, it gave credit to Holmes, cancelled a check which it held against him, and put itself in a worse position than it would have been in if such credit had not been given to him as a result of such loan; that, therefore, defendant is estopped, as against the Merchants' Bank and this plaintiff, from setting up such defense. The evidence amply warranted the court in finding that the representations were made with the intent aforesaid; that defendant relied on them, and was by them induced to make the loan. The only evidence tending to show that the stock was worthless on February 15, 1895, was that the Merchants' Bank was insolvent on February 25, 1895, and that its affairs were in substantially the same condition on the former date as on the latter.

1. Appellant assigns as error the admission of certain evidence introduced for the purpose of showing such insolvency. The court permitted evidence to be introduced of the testimony of Moore, the receiver, given by him on the trial of another action between other parties, in which he stated the total amount of the assets of the defunct bank, and the total amount of its liabilities, when he took possession. Admissions of Moore to the vice president of defendant to the effect that its repudiation of the claim was just were also received in evidence. After the action was commenced by the attorney general, a creditor of the Merchants' Bank intervened in that action, and filed a complaint to enforce the stockholders' superadded liability. It is alleged in that complaint that the Merchants' Bank was insolvent on February 25. This plaintiff, who is an attorney at law, signed that complaint as the attorney of the intervening creditor. We do not deem it necessary to pass on the admissibility of any of this evidence. There is other evidence in the case which tends to prove that the Merchants' Bank was insolvent at the time aforesaid, and plaintiff did not offer a particle of evidence to rebut the same, or to prove that the bank was not insolvent at such time. Therefore the evidence is conclusive that it was then insolvent, and, if it was error to admit the evidence objected to, it was error without prejudice.

It appears by the report of sale made by the receiver, offered in

evidence by the plaintiff, that the greater portion of the assets of the defunct bank was sold at a very small price. Among the assets so sold were several promissory notes made by Holmes, which sold for about one dollar for every $1,000 thereof. Plaintiff made in said intervention proceedings an affidavit for the purpose of having additional parties brought in, and it is stated in the affidavit that certain stockholders are liable for certain amounts on their superadded liability. On the trial, plaintiff stated that he made this statement on the assumption that ultimately the assets would not be sufficient to pay the debts. He then further testified:

"Q. That the assets of the bank on hand on February 25 were not sufficient to pay the liabilities of the bank on that day? A. Why, I think so. I was acting as attorney for one of the creditors, as sufficiently indicated in that paper."

This evidence of the insolvency of the Merchants' Bank is corroborated in some slight degree by almost every line and page of testimony in the case, and is wholly uncontradicted.

2. In our opinion, the trial court did not err in holding that, on the faith of the credit given by defendant to the Merchants' Bank for the benefit of Holmes, the latter bank did not part with anything which can be urged here as the basis of any such estoppel against defendant.

For the purpose of making it appear that the indebtedness of Holmes to the Merchants' Bank was much less than it really was, the sum of $12,627.87 of that indebtedness was, on the books of that bank, charged to the First National Bank of Casselton, North Dakota. There never was any foundation for any such charge, and the latter bank was at that time indebted to the former in the sum of $27.80, and no more. Besides this fictitious charge against the Casselton bank, the Merchants' Bank kept in its drawer a check drawn by Holmes on the former bank in favor of the latter bank for the sum of $4,000. This check was never entered on the books of the latter bank, and was never presented for payment to the former bank, which knew nothing about the existence of this check, or of the false charge on the books of the latter bank. This was the con-

dition of things February 15, 1895, when defendant informed the Merchants' Bank that it had been credited with the $3,940 for the benefit of Holmes. Thereupon, on the faith of this, the Merchants' Bank credited Holmes' account with $4,000, credited the fictitious account against the Casselton bank with the same amount, and surrendered to Holmes the check aforesaid; he having at the same time given the Merchants' Bank a new check for $60. In our opinion, the trial court was warranted in finding, and we may assume that it did find, that the $4,000 check so kept in the drawer was given by Holmes, and held by the Merchants' Bank, merely for the purpose of keeping up false appearances, and was a part of the same scheme in pursuance of which it made the false charges in its books. Neither plaintiff nor the Merchants' Bank can predicate any estoppel on the fact that such bank used the credit thus extended as a pretext for taking down some of these false colors.

But the fact still remains that, by reason of the giving of such credit by defendant to the Merchants' Bank, the latter was induced to give Holmes credit to the amount of $3,940 on his antecedent indebtedness to the latter bank. In our opinion, this alone will not constitute a sufficient ground for such an estoppel. According to the weight of authority, it is sufficient to protect the indorsee of negotiable paper, taken in good faith before maturity, that the same was taken in payment of or as security for an antecedent debt. Rosemond v. Graham, 54 Minn. 323, 56 N. W. 38; 4 Am. & Eng. Enc. (2d Ed.) 285. But the Merchants' Bank was not protected by any such doctrine of negotiability, and neither is plaintiff. As against either of these, the payment of the antecedent debt of Holmes to the latter bank is not sufficient to shield it or plaintiff from the defendant's defense; but, as against either of these, the defendant is entitled to make any defense which it could have made against Holmes himself. This disposes of all the questions raised having any merit.

Order affirmed.