MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY v. AUGUST T. KOERNER.[1]

December 27, 1901.

Nos. 12,750—(141).

**Purchase of One Railroad by Another—Gross Earnings Tax.**

Under the gross earnings tax law the purchase of a railroad subject to the one per cent. tax by a company subject to the three per cent. tax does not operate as a merger, nor entitle the state to take into consideration the earnings of the former in estimating the gross earnings of the latter.

**Injunction—Complaint Good.**

In an action brought to enjoin the state from collecting the additional two per cent. tax from such purchaser, *held*, that the complaint states a good cause of action.

Appeal by plaintiff from an order of the district court for Ramsey county, O. B. Lewis, J., sustaining a demurrer to the complaint. Reversed.

*Albert E. Clarke*, for appellant.

*W. B. Douglas*, Attorney General, and *C. W. Somerby*, Assistant Attorney General, for respondent.

LEWIS, J.

The complaint in this action alleges: That the Minneapolis, New Ulm & Southwestern Railroad Company was incorporated under the general laws of this state in 1895. That in pursuance of the powers granted in its articles of incorporation it constructed a line of railroad extending from Winthrop, in Sibley county, Minnesota, in a southerly direction through the counties of Sibley and Nicollet to New Ulm in Brown county. That under the provisions of G. S. 1894, §§ 1667–1669, the railroad so constructed became and was subject to taxation as follows: A tax of one per cent. on its gross earnings during the years 1897, 1898, and 1899; two per cent. from 1900 to 1906, inclusive, in lieu of all other taxes, and three

[1] Reported in 88 N. W. 430.

per cent. thereafter. That such railroad company duly made a statement showing the amount of its gross earnings during 1897 and 1898, as required by law, and paid to the state treasurer one per cent. upon its gross earnings for those years. That on February 9, 1899, for a valuable consideration, appellant purchased the Minneapolis, New Ulm & Southwestern Railroad, together with all the right of way, lands used in connection with it, railway tracks, bridges, depots, freight houses, etc., together with all and singular the rights, franchises, powers, privileges, immunities, and property of every kind; and that appellant has since February 9, 1899, been the owner and in possession thereof. That the tax estimated at one per cent. on the gross earnings for January and February of 1899, and for the last ten months of 1899, was paid to the state treasurer by appellant.

The complaint further charges that the state treasurer claims appellant is indebted to the state for the further tax of two per cent. upon such gross earnings, and that, unless paid, the treasurer will take proceedings to levy against appellant's property for the purpose of collecting the amount of the tax. The relief sought is an injunction against the state treasurer from proceeding to make the collection. A demurrer to this complaint was sustained by the trial court upon the ground that it did not state facts sufficient to constitute a cause of action.

Under the law of this state appellant is required to pay a tax of three per cent. on its gross earnings, and the state insists that the purchase of the New Ulm & Southwestern operated as a merger of that road into appellant's system, and that the earnings of the purchased road are to be estimated in making up the amount of the gross earnings of the purchaser. These acts have been construed adversely to the state's position in State v. Northern Pac. R. Co., 36 Minn. 207, 30 N. W. 663.

It has long been settled by the decisions of this state that the gross earnings tax law was not intended to change the character of the tax, but, for the purpose of certainty, was intended to change the method of computation. The amount required to be paid still remains a tax upon the railroad property, and not against the corporation. It is often referred to as the "commuted tax."

Another purpose of enacting the law referred to was evidently to induce capital to become interested in railroad building. The legislature took note of the well-known fact that a new railroad in a new country might, for some years, be a matter of experiment, and in its first experience unprofitable; but that, as the country through which it runs is settled and developed, the railroad business increases, and, in proportion, the company becomes able to pay a higher rate of taxation. In its wisdom, the legislature adjusted the tax to those experimental stages as provided in the act. It was immaterial to the state whether such new roads continued to be operated under a lease or by a purchaser, or whether they continued to be owned and operated by the original corporation. The act contains no express prohibition to a sale and transfer of such railroads to companies already subject to the three per cent. gross earnings tax, and there is no language from which it can be implied. If it be conceded that a merger arises where roads paying a one per cent. tax are sold to a company paying a three per cent. tax, the converse must be equally true, and a merger occurs when the road paying a three per cent. tax is sold to a company paying a one per cent. tax. The statutes are not capable of any such construction, and our conclusion is that no change has been effected in the rate of taxation on the gross earnings of the Minneapolis, New Ulm & Southwestern road from the fact that it has been purchased and is now operated by appellant.

The complaint states a good cause of action.

Order reversed.