STATE v. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

100 N. W. (2d) 669.

December 31, 1959—No. 37,813.

*Richard Musenbrock, William J. Powell,* and *LeRoy C. Corcoran,* for appellant.

*Miles Lord,* Attorney General, and *Ralph W. Peterson,* Special Assistant Attorney General, for respondent.

MATSON, JUSTICE.

Defendant railroad appeals from a judgment in favor of the state

for unpaid gross earnings taxes in the sum of $15,129.17, plus 10-percent statutory penalties, and a further statutory percent penalty on the unpaid tax.

This action was brought pursuant to M. S. A. 295.02 and 295.04 to recover unpaid gross earnings taxes for the years 1954 and 1955. Defendant denies liability for the gross earnings taxes in question on the ground that they relate solely to gross earnings derived, not from property owned or operated by defendant railroad, but from property owned and operated by an independent truck line, Spellacy Motor Cargo Company, hereinafter called Spellacy. Defendant by contract hired Spellacy to haul 1. c. 1. (less-than-carload lot) freight between stations of the railroad paralleling its road in the state. All such freight belonged to customers of the railroad. Under the contract of hire, Spellacy is limited to hauling for the railroad only over specified routes. Whether a particular customer's load of freight will be hauled by rail or by truck is the decision of the railroad. When 1. c. 1. freight is to be hauled by Spellacy, its driver picks up the freight at the depot of the railroad where it is loaded onto the Spellacy truck by railroad employees. The truck driver signs a bill of lading for the goods which, though in form of a trucker's bill, is printed and filled out by the railroad. The freight is then hauled to the depot of the railroad in the community to which it is addressed. It is unloaded there either by the railroad's employees or by the driver. Spellacy is compensated by the railroad and it does not deal with the shipping public.[1]

Spellacy has hauled 1. c. 1. freight for the railroad since 1946. From 1946 to 1954 the railroad compensated Spellacy on a cost-plus basis (i. e., Spellacy's costs plus an additional 10 percent for profit) and during this period the railroad included in its gross earnings the compensation paid to Spellacy. On February 20, 1954, pursuant to an order of the Railroad and Warehouse Commission compelling all motor carriers hauling railroad 1. c. 1. freight to publish their own

---

[1] In the 1. c. 1. trucking operations two other motor carriers are involved, namely, Brady Motorfrate and Murphy Motor Freight Lines; but by stipulation, since their operations are similar to Spellacy, only the evidence as to Spellacy will be considered.

tariffs, Spellacy published and filed with the commission its own schedule of rates. It is conceded that the order of the commission was based on the decision of this court in Rock Island Motor Transit Co. v. Murphy Motor Freight Lines, Inc. 229 Minn. 291, 40 N. W. (2d) 896, holding that a motor trucker hauling for a railroad is not permitted to operate under a license issued pursuant to a law (M. S. A. c. 221) regulating auto-transportation companies and to receive compensation on the basis of railroad tariffs regulated under another law. As a result Spellacy, after February 20, 1954, not only operated under its own certificate of public convenience and necessity but also published its own tariffs as an auto-transportation company. Under these new tariffs the railroad compensated Spellacy at a rate of 35 cents per vehicle mile. There is evidence to sustain the trial court's findings that the rate of compensation remained substantially the same as it had been under the prior cost-plus system. Since February 20, 1954, the defendant has not included in its gross earnings the amount it has collected and paid Spellacy.

Defendant railroad asserts that after February 20, 1954, Spellacy operated as an independent auto-transportation company, distinct from the railroad, since it operated under its own certificate of public convenience and necessity and published its own independent tariffs. In view of Spellacy's new status, defendant contends that the compensation paid to Spellacy is not a part of its gross earnings within the meaning of § 295.02, which in part provides:

"Every railroad company owning or operating any line of railroad situated within, or partly within, this state shall, annually, pay into the state treasury, *in lieu of all taxes upon all property within this state owned or operated for railway purposes* by such company, including equipment, appurtenances, appendages and franchises thereof, a sum of money equal to five percent of the gross earnings *derived from the operation of such line of railway within this state*." (Italics supplied.)

Defendant's contention stands or falls upon the interpretation of the foregoing statutory provision. Since it cannot be denied that defendant owns or operates a railroad situated within, or partly within, the State of Minnesota, we have only these two basic issues:

(1) May defendant's gross earnings include earnings derived from property which is neither *owned nor operated* by the defendant for railway purposes?

(2) Does that portion of defendant's shipping charges collected by the defendant and paid over to the trucking company constitute earnings *derived from the operation of defendant's line of railway within this state?*

With respect to the first issue defendant argues that if it is required to include in its gross earnings that portion of its shipping charges paid to Spellacy, it will be paying a tax measured, in part, by gross earnings from property which is neither owned nor operated by the defendant; that the tax so measured will amount to a tax upon property which it neither owns nor operates, in clear contravention of the statutory words that the tax thereby imposed is to be *"in lieu of all taxes upon all property within this state owned or operated for railway purposes by"* the defendant. (Italics supplied.) Essentially defendant's argument is that although the gross earnings tax is a tax in lieu of ordinary forms of taxation, the subject matter to which the tax applies is still property, and that only the method of computing the tax has changed; that since defendant could not be taxed upon the Spellacy trucks under an ordinary property tax because the trucks were neither owned nor operated by the defendant, it has no tax liability upon the gross earnings derived from the operation of such trucks.

■ Although defendant's contention is plausible, and finds some basis in the language of our decisions, it is nevertheless erroneous. Defendant's mistaken position undoubtedly arises from a failure to bear in mind that this court's classification of the gross earnings tax *as a tax upon railroad property within this state* is obviously a legal fiction employed to avoid what was thought to be an interference with interstate commerce. In State v. United States Express Co. 114 Minn. 346, 351, 131 N. W. 489, 491, 37 L.R.A. (N.S.) 1127, affirmed, 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459, this court said:

"* * * If the gross earnings tax law is to be construed as a tax upon gross earnings, admittedly a tax upon the earnings from interstate shipments is an interference with interstate commerce; but if

such law does not authorize a tax upon gross earnings, if it is a tax upon the property of the corporation within the state, its gross earnings within the state being merely a measure or method of arriving at the value of its property for taxation, it is equally clear that there is no interference with interstate commerce, and the legislature has not acted beyond its power."[2]

A tax which is *in lieu of all taxes upon all property within this state owned or operated for railroad purposes* is, accurately speaking, not a direct tax upon such property but a substitution for such tax.[3] It is a property tax only in the limited sense "that its imposition is based *upon the right to tax the property producing the earnings*" (italics supplied) and it is aimed at the business to which it is applicable *considered as a whole and embracing all property used therein*. State v. Minneapolis & St. L. R. Co. 204 Minn. 250, 253, 283 N. W. 244, 245.

If it were in fact a direct tax levy upon the property owned and operated by the defendant railway, there would be some merit in the assertion that the computation of the tax must be confined solely to property actually owned or operated by the defendant to the exclusion of property owned and operated by others. Such, however, is not the case. The fiction that it is a property tax, the amount of which is com-

---

[2]See, Blakey, Taxation in Minnesota, pp. 326, 327.

[3]In State v. Minneapolis & St. L. R. Co. 204 Minn. 250, 252, 283 N. W. 244, 245, this court said:

"The gross earnings tax has been described by various names, but it is best defined by the language of the statute itself as 'in lieu of all taxes, upon all property within this state owned or operated for railway purposes.' The phrase 'in lieu of' means 'in place of' or 'instead of' (Century Dictionary; Funk & Wagnall's New Standard Dictionary); and when the gross earnings tax has been called a 'commutation' tax the word has obviously been used in the sense of substitution. Therefore the gross earnings tax is a tax in place of or substituted for the tax that would otherwise be imposed upon the specific items of railroad property. It is the appropriate means used by the state for reaching the actual or full value of the railroad property as a going concern and as an index or measure of value of the property as a whole. Pullman Co. v. Richardson, 261 U. S. 330, 43 S. Ct. 366, 67 L. ed. 682."

puted upon the basis of, and in proportion to, the gross earnings from the railroad business as a whole, has served a practical juristic and tax administration purpose. Although a legal fiction may serve a useful function in the administration of the tax law, it need not be treated as an impenetrable smoke screen which prevents a sound interpretation of statutes and decisions.

Although the gross earnings tax is not in the true technical sense a property tax, the property owned and operated by the railroad is justifiably treated as the subject matter of the tax since it gives rise to the tax liability obligation, and the railroad's gross earnings are used only as a basis for computing the amount of that obligation. Neither the property itself, nor any percentage of its value, is the measure of the gross earnings tax as authorized by the state constitution. In Minneapolis & St. L. R. Co. v. Koerner, 85 Minn. 149, 150, 88 N. W. 430, 431, in pointing out that that resort to gross earnings is only for the purpose of providing a method of computation, this court said:

"It has long been settled by the decisions of this state that the gross earnings tax law was not intended to change the character of the tax, but, *for the purpose of certainty, was intended to change the method of computation.* The amount required to be paid still remains a tax upon the railroad property, * * *." (Italics supplied.)

Defendant's argument overlooks the distinction between the subject matter of the tax imposed by § 295.02, namely, defendant's property, and the method by which the tax is computed, namely 5 percent of the defendant's gross earnings.[4] *This court has never held that the amount of the tax as computed on the basis of a railroad's gross earnings must be equal to, and no greater than, the amount of a property tax levied upon specific items of property and measured by a certain percentage of their value.* The very fact that the amount of the tax imposed by § 295.02 is measured by a fixed percentage of a railroad's gross earnings indicates that it need not, and probably will not, bear a

---

[4]See, Illinois Cent. R. Co. v. Minnesota, 309 U. S. 157, 60 S. Ct. 419, 84 L. ed. 670; G. N. Ry. Co. v. Minnesota, 278 U. S. 503, 49 S. Ct 191, 73 L. ed. 477; Minneapolis & St. L. R. Co. v. Koerner, 85 Minn 149, 88 N. W. 430.

direct relation to a given percentage of the assessed value of a railroad's property.[5]

In State v. Chicago, R. I. & P. Ry. Co. 181 Minn. 615, 618, 232 N. W. 105, 106, 233 N. W. 866, this court stated that:

"* * * The gross earnings tax is intended *to reach and apply to all gross income from railroad transportation business,* * * *." (Italics supplied.)

The method of taxing railroads embodied in § 295.02 was adopted as a more certain and convenient means of computing the tax which would otherwise be due on railroad property.[6] Since the gross earnings from all railroad-transportation business, and not the property owned and operated by the railroad, is the measure of, and the basis for, computing the tax, it follows that the state taxing authorities did not act improperly in including in defendant's gross earnings the earnings derived from property neither owned nor operated by the defendant.

■ We turn to the second issue. Does that portion of defendant's shipping charges collected by defendant and paid over to Spellacy constitute gross earnings derived from the operation of defendant's railway line within this state? In two cases[7] we have applied the incidental test and held that when a railroad company is engaged in work reasonably within its charter powers, the receipts from such sources constitute gross income in the operation of its railway line if such income is derived from service activities which are incidental to its trans-

---

[5]It has been held with respect to the apportionment of a railroad's gross income to this state: "That the apportionment may not result in mathematical exactitude is certainly not a constitutional defect. Rough approximation rather than precision is, as a practical matter, the norm in any such tax system." Illinois Cent. R. Co. v. Minnesota, 309 U. S. 157, 161, 60 S. Ct. 419, 422, 84 L. ed. 670, 674.

[6]See, State v. Cudahy Packing Co. 129 Minn. 30, 33, 151 N. W. 410, 411; State v. United States Express Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A. (N.S.) 1127, affirmed, 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459; see, also, Blakey, Taxation in Minnesota, pp. 327 to 328, 342 to 343.

[7]State v. Minnesota & International Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007; State v. Northern Pacific Ry. Co. 217 Minn. 113, 14 N. W. (2d) 232.

portation business as a railroad. We reaffirm the incidental test as applicable to the present case.

We have a significant application of the test in State v. Minnesota & International Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, wherein this court held to be includible in the defendant railway's gross earnings the receipts from lumber companies for switching cars, receipts from other railroads for the use of defendant's work trains employed in construction work, and receipts from other railroads in excess of amounts due to them for the use of cars. In so holding we said (106 Minn. 181, 118 N. W. 680):

"The operation of a railroad is not necessarily restricted to operating trains upon railway tracks. We believe it to have been the purpose of the legislature to require railroad companies to pay into the state treasury the stated percentage of the amount of earnings received in connection with all operations reasonably within the powers conferred upon them by the corporate acts. Such companies are organized and conducted primarily for transportation purposes, but they receive a considerable *income from other sources incidental to the transportation business,* though not directly from the operation of trains. We believe the proper meaning of the act under consideration to be that, when a railroad company is engaged in work reasonably within its charter powers, the receipts from such sources constitute gross earnings in the operation of the railroad."[8] (Italics supplied.)

We have an especially illuminating application of the incidental test in State v. Northern Pacific Ry. Co. 217 Minn. 113, 14 N. W. (2d) 232, wherein we held that amounts collected and paid for switching services by a connecting carrier and amounts paid to a stockyard company for unloading livestock were held not includible in gross income. In contrast, however, amounts paid to independent truckers for a pickup-and-delivery service for shippers were held includible. Defendant railway in that case was engaged in the business of transport-

---

[8]Quoted with approval in State v. Northern Pacific Ry. Co. 217 Minn. 113, 114, 14 N. W. (2d) 232, 233. The above-quoted case has been continuously relied upon by this court in cases concerning the railroad gross earnings tax. Cases considering what constitutes gross earnings are collected in 18 Dunnell, Dig. (3 ed.) § 9562.

ing livestock to the South St. Paul stockyards. Defendant was required by law to extend its published rates to include the costs of switching services performed by a connecting carrier (the defendant had no trackage from the St. Paul terminal to the South St. Paul stockyards) and the cost of loading and unloading livestock at the stockyards. The amounts for these charges were collected by the defendant as a part of its standard charge to the shipper and were paid over to the connecting carrier and the stockyard company. With respect to these amounts this court held that neither were includible in defendant's gross earnings, stressing, in each instance, that the services performed by the connecting carrier and the stockyard company were distinct and separate from the services rendered by the defendant in its transportation business. With a reference to the stockyard charges, this court said (217 Minn. 117, 14 N. W. [2d] 235):

"* * * In collecting the total charges from the shippers of livestock, defendant was a mere conduit or pipe line for the transmission of the stockyards company's share of the total freight charges from the shippers of livestock to the stockyards company. It acted as mere agent for the stockyards company in these transactions and, therefore, should not be required to include the stockyard charges in its gross earnings returns."

■ In contrast, however, we ruled in the Northern Pacific case that moneys collected by the defendant and paid over to various trucking companies in return for the latter's pickup-and-delivery service were includible. The trucking company's services consisted of transporting 1. c. 1. freight to and from defendant's terminal. It was optional with the shipper whether to make use of the pickup-and-delivery service or, in lieu thereof, to obtain an allowance reducing the freight charge. In holding that the moneys collected by the defendant and paid over to the trucking companies were includible in the defendant's gross earnings, this court stressed the fact that the pickup-and-delivery service afforded defendant's shippers was essentially a part of defendant's service to the shipping public, and not an independent service offered directly to the public by the trucking companies. In response to defendant's contention that the trucking companies were independent con-

tractors and that therefore the moneys collected by the defendant and paid over to them for the pickup-and-delivery service were earnings of the trucking companies and not of the defendant, this court stated (217 Minn. 120, 14 N. W. [2d] 236):

"The fact that the truckers employed by defendants are independent contractors hauling on their own responsibility is not decisive. The test is not whether defendant performs its services to the public through employes or through contractors, or at a direct gain or loss to itself, but *whether the services are performed as an incident of defendant's business as a railroad company.*" (Italics supplied.)

Defendant asserts that since Spellacy exists independently of defendant's control and serves an independent public need, Spellacy's service is not an incident of defendant's transportation business as a railroad. The premises of defendant's argument are based upon the action taken by the State Railroad and Warehouse Commission, first, in issuing the certificate authorizing Spellacy to haul 1. c. 1. freight for the defendant, and second, in requiring Spellacy to publish a schedule of its own tariffs. The defendant places great weight upon the commission's determination that Spellacy is an independent motor-transport carrier, and contends that since Spellacy is considered to be independent in the eyes of the commission it must also be considered independent in the eyes of the taxing authorities. It is clear from our holding in the Northern Pacific case with respect to independent contractors that Spellacy's legal status, dependent or independent, is not decisive. Nothing of consequence is added to that independent legal status by the fact that Spellacy published its own tariffs. Under the incidental test as set forth in both the Minnesota & International Ry. Co. and Northern Pacific cases, the key factor is the nature of the service rendered, and we can only conclude that the trial court was right in holding that the services performed by Spellacy were incidental to defendant's railway-transportation business and that the amounts paid to Spellacy were a part of its gross earnings.

■ Apparently defendant relies upon estoppel as preventing inclusion in its gross earnings of amounts paid to Spellacy on the theory that the action of the Railroad and Warehouse Commission, in clas-

sifying Spellacy as an independent motor carrier, is binding on the State Tax Department. Although, as we have already pointed out, the independent or dependent legal status of Spellacy is of no controlling significance, we shall deal with the issue of estoppel. The case of Valier Coal Co. v. Dept. of Revenue, 11 Ill. (2d) 402, 143 N. E. (2d) 35, 64 A. L. R. (2d) 763, cited by defendant, is not in point. In that case the Illinois Public Utilities Commission had approved the sale of coal lands to a wholly owned subsidiary to assure the parent company of a constant supply of coal. As a part of its approval of the sale, the utilities commission prohibited the subsidiary from selling coal to the parent company at a price above cost and further prohibited it from selling coal to any third party. Many years later the Illinois Department of Revenue levied a retailers' occupation tax upon the subsidiary despite the fact that the utilities commission had prevented and prohibited the subsidiary from ever engaging in the retail coal business. The levy was held invalid on the ground, among others, that the revenue department could not impose a tax on the subsidiary for doing something that it had been prevented from doing by the utilities commission.

Unlike Spellacy in the present case, the subsidiary was a party to both proceedings, the one before the utilities commission and the one instituted by the revenue department. By way of contrast defendant in the present case was not a party to the Railroad and Warehouse Commission proceedings wherein Spellacy was determined to be an independent motor carrier, and on the other hand, Spellacy is not a party to the proceedings for the collection from the defendant of a gross earnings tax upon amounts paid to Spellacy. In other words defendant railroad (unlike the subsidiary in the Illinois case) was a stranger to the proceeding before the Railroad and Warehouse Commission establishing Spellacy as an independent motor carrier. It is too elementary to require discussion that a stranger to a proceeding may not use that proceeding as a basis for asserting an estoppel to action taken in a wholly different proceeding. In other words one cannot assert an estoppel with respect to a transaction or a proceeding to which one is not a party.[9]

---

[9]See, Alexander v. Thompson, 42 Minn. 498, 44 N. W. 534; Selover v. First Nat. Bank, 77 Minn. 140, 79 N. W. 666; Makiesky v. National

Upon the evidence we can only conclude that the trial court was right in holding that Spellacy's services were incidental to the defendant's railway-transportation business. We need not review the evidence in detail. It is enough to observe that Spellacy, as a motor-vehicle carrier, performed for defendant the same services that defendant would otherwise have had to perform for itself in giving service to its shippers and that such services constituted an integral part of the railway-transportation business. In fact the defendant advertised and held out to its shipping customers that the trucking company's l. c. l. service was a part of its own service. It is significant that Spellacy hauled freight only between defendant's stations, and parallel to defendant's lines, and had no independent control over the routes to be followed, and furthermore had no contact with the defendant's customers. Spellacy's services were fully as incidental to defendant's business—if not more clearly so—than the pickup-and-delivery services performed by the independent truckers in State v. Northern Pacific Ry. Co. 217 Minn. 113, 14 N. W. (2d) 232.

■ The defendant railway asserts that the imposition of the railroad gross earnings tax in a manner which would require the defendant to include in its gross earnings the earnings derived from property neither owned nor operated by it for railway purposes violates both Minn. Const. art. 1, § 1, and U. S. Const. Amend. XIV, § 1. It admits, however, that its approach to the constitutional question is made difficult by Minn. Const. art. 4, § 32(a), and art. 9, § 1. Indeed it is an understatement to designate defendant's constitutional approach as difficult since it is not merely difficult but wholly untenable. The untenability of its position no doubt stems in part from its misunderstanding of the nature and impact of the gross earnings tax as a method of tax computation. Defendant seems to argue that Minn. Const. art. 9, § 1, which provides that "Taxes shall be uniform upon the same class of subjects," and further provides "that nothing herein contained shall

Guardian Life Ins. Co. 174 Minn. 554, 219 N. W. 864; see, also, 2 Davis, Administrative Law Treatise, c. 17. Even if defendant were in a position to assert the doctrine of an estoppel, it is unlikely that he could do so. See, State v. Illinois Cent. R. Co. 200 Minn. 583, 274 N. W. 828, 275 N. W. 854.

be construed to affect, modify or repeal any existing law providing for the taxation of the gross earnings of railroads," has some application to the present case, notwithstanding the admitted fact that the restrictive provisions of art. 9, § 1, are not applicable to railroads. See, Stearns v. Minnesota, 179 U. S. 223, 238, 21 S. Ct. 73, 79, 45 L. ed. 162, 172. There is no basis for disregarding Minn. Const. art. 9, § 1, and art. 4, § 32(a), which provide a special mode of taxing railroad companies in lieu of other taxes. Our recent decision of In re Petition of Hamm v. State, 255 Minn. 64, 95 N. W. (2d) 649, is wholly inapplicable to the present case. Furthermore, any contention that defendant is being subjected to double taxation is effectively answered in State v. Railway Express Agency, Inc. 210 Minn. 556, 299 N. W. 657.

Defendant also asserts a violation of the due process and equal protection provisions of U. S. Const. Amend. XIV, § 1. Although no argument is advanced in support of such assertion, it clearly appears upon the facts of this case that any supposed violation of the Federal Constitution is sufficiently answered in prior decisions.[10]

The judgment of the trial court is affirmed.

---

[10]Illinois Cent. R. Co. v. Minnesota, 309 U. S. 157, 60 S. Ct. 419, 84 L. ed. 670; G. N. Ry. Co. v. Minnesota, 278 U. S. 503, 49 S. Ct. 191, 73 L. ed. 477; Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 S. Ct. 373, 62 L. ed. 827; United States Express Co. v. Minnesota, 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459; see, State v. Wells Fargo & Co. 146 Minn. 444, 179 N. W. 221.