CC LEASING CORPORATION AND ANOTHER v. COUNTY OF HENNEPIN.

209 N. W. 2d 672.

July 20, 1973—No. 43710.

40

*Charles H. Clay,* for appellants.

*George M. Scott,* County Attorney, and *David E. Mikkelson,* Assistant County Attorney, for respondent.

TODD, JUSTICE.

Petitioner, CC Leasing Corporation, and complainant in intervention, Soo Line Railroad Company, appeal from a judgment of the Hennepin County District Court determining that petitioner owes personal property taxes payable in the years 1969,

1970, and 1971 on certain computers which petitioner has leased to intervenor. The issue raised on appeal is whether a gross earnings tax imposed upon intervenor precludes an assessment for personal property taxes against the property owned by petitioner but leased to intervenor. We reverse.

Petitioner leased certain computer equipment to intervenor railroad by lease agreements dated July 20, 1967, and June 13, 1968, which property was operated for railway purposes. The two lease agreements, while not identical, do substantially confer upon intervenor all the incidents of ownership, such as the right to select the type of equipment to be purchased by petitioner, the duty to repair and maintain, the duty to provide insurance, the duty to pay all taxes properly assessed against said property, the right to investment tax credits, the right to any profits from the sale of the equipment during the term of the lease over and above the balance due under the lease agreement, and the obligation to make up the deficit in the event of sale during the term of the lease. The lease agreements are in essence sophisticated finance agreements, but this fact is not determinative of the issue before us.

■ The trial court held that since petitioner was the owner of the property, it was obligated to pay the personal property taxes assessed against the property despite the fact that intervenor paid gross earnings taxes to the State of Minnesota. Intervenor has paid gross earnings taxes for the years in question.

Minn. Const. art. 4, § 32[a], provides as follows:

"Any law providing for the repeal or amendment of any law or laws heretofore or hereafter enacted, which provides that any railroad company now existing in this State or operating its road therein, or which may be hereafter organized, shall, in lieu of all other taxes and assessments upon their real estate, roads, rolling stock, and other personal property, at and during the time and periods therein specified, pay into the treasury of this State a certain percentage therein mentioned of the gross earnings of such railroad companies now existing or hereafter organized,

shall, before the same shall take effect or be in force, be submitted to a vote of the people of the State, and be adopted and ratified by a majority of the electors of the State voting at the election at which the same shall be submitted to them."

Pursuant to this section, our legislature adopted a gross earnings tax on railroads, in effect during the taxable years in question and at present. Minn. St. 295.02 provides in part as follows:

"Every railroad company *owning or operating* any line of railroad situated within, or partly within, this state shall, annually, pay to the commissioner of taxation, in lieu of all taxes upon all property within this state *owned or operated* for railway purposes by such company, including equipment, appurtenances, appendages and franchises thereof, a sum of money equal to five percent of the gross earnings derived from the operation of such line of railway within this state." (Italics supplied.)

Our court has had occasion many times to comment on the nature of the gross earnings tax. In State v. Minneapolis & St. Louis R. Co. 204 Minn. 250, 252, 283 N. W. 244, 245 (1939), we said:

"The gross earnings tax has been described by various names, but it is best defined by the language of the statute itself as 'in lieu of all taxes, upon all property within this state owned or operated for railway purposes.' The phrase 'in lieu of' means 'in place of' or 'instead of' (Century Dictionary; Funk & Wagnall's New Standard Dictionary); and when the gross earnings tax has been called a 'computation' tax the word has obviously been used in the sense of substitution. Therefore the gross earnings tax is a tax in place of or substituted for the tax that would otherwise be imposed upon the specific items of railroad property. It is the appropriate means used by the state for reaching the actual or full value of the railroad property as a going concern and as an index or measure of value of the property as a whole."

Also, in State v. Minneapolis & St. Louis Ry. Co. 257 Minn. 124, 130, 100 N. W. 2d 669, 674 (1959), we said:

"Although the gross earnings tax is not in the true technical sense a property tax, the property owned and operated by the railroad is justifiably treated as the subject matter of the tax since it gives rise to the tax liability obligation, and the railroad's gross earnings are used only as a basis for computing the amount of that obligation. Neither the property itself, nor any percentage of its value, is the measure of the gross earnings tax as authorized by the state constitution. In Minneapolis & St. L. R. Co. v. Koerner, 85 Minn. 149, 150, 88 N. W. 430, 431 [1901], in pointing out that that resort to gross earnings is only for the purpose of providing a method of computation, this court said:

'It has long been settled by the decisions of this state that the gross earnings tax law was not intended to change the character of the tax, but, *for the purpose of certainty, was intended to change the method of computation.* The amount required to be paid still remains a tax upon the railroad property * * *.' (Italics supplied.)"

■ In construing the gross earnings tax as applied to railroads, our court carefully noted that the statute is an "in lieu" statute which covers property either owned or operated. It is of importance to note the plurality of property covered by the gross earnings statute. Ownership includes the right to operate. Consequently, property operated by the railroad as distinct from property owned by the railroad can only logically refer to non-owned property. In State v. Duluth, Missabe & Northern Ry. Co. 207 Minn. 618, 292 N. W. 401 (1939), certiorari denied, 311 U. S. 719, 61 S. Ct. 439, 85 L. ed. 468 (1941), our court had occasion to consider this distinction. There, the Duluth & Iron Range Rail Road leased its entire railroad property to the Duluth, Missabe & Northern Railway Company and the state sought to impose a franchise tax on the rental income received

by the lessor railroad. We there said in construing our statute and constitution (207 Minn. 628, 292 N. W. 406):

"The gross earnings tax is a tax on all the railroad property owned by the Iron Range and leased to the Missabe. The character of the tax results in its being paid by the lessee, but it is a tax on whatever interest the lessor has in the property, tangible or intangible. It cannot be increased or supplemented by an additional tax without the approval of the people. To impose another tax would be, in effect, to amend § 2246, which by its terms covers ownership of railroad property as well as operation. To impose a tax on the lessor's receipts would be to duplicate the tax on the same property. State v. St. P. M. & M. Ry. Co. 30 Minn. 311, 15 N. W. 307 [1883]. The state contends that it is not duplication and that the franchise to be is left entirely separate from the operations of the railroad by the terms of the lease. We do not so regard the situation. The gross earnings tax by its terms is in lieu of an *ad valorem* tax on the ownership as well as the operation of property which is devoted to railroad purposes, and it does not change the situation that the tax in its nature falls entirely on the lessee operator. State v. St. P. M. & M. Ry. Co. [*supra*]. The franchise is being exercised by the lessor for railroad purposes, and consequently its earnings in the form of rent from property devoted to such purposes may not be used as a measure of taxable net income imposed upon the franchise under c. 405. To do so would increase the property tax upon the franchise without approval of the people."

■ The provisions as to the railroad gross earnings statute are peculiar to it. Other gross earnings statutes covering telephone companies,[1] sleeping car companies,[2] freight line companies,[3] telegraph companies,[4] and express companies[5] do not

---

[1] Minn. St. 295.34

[2] Minn. St. 295.29

[3] Minn. St. 295.24

[4] Minn. St. 295.32

[5] Minn. St. 295.21

use the words "or operated" in determining the imposition of the gross earnings tax. Similarly, the provisions of our law exempting municipalities and certain charitable corporations from taxation are based upon ownership and not operation of particular property. In State v. Fawkes, 210 Minn. 587, 589, 299 N. W. 666, 667 (1941), we commented on this distinction:

"Does the express company's payment of its property tax cover the defendant's property? We think it does not. As stated in State v. Railway Exp. Agency, Inc. [210 Minn. 556, 299 N. W. 657 (1941)], the express company's tax covers *its* property only. 1 Mason Minn. St. 1927, § 2268, as amended, does not in any way make the tax one upon property *operated* as distinguished from that *owned,* by express companies. In that respect it differs from the tax imposed upon railroad companies, and the cases involving railroad taxation are not in point. The defendant still has his property in the real estate here involved, and it earns him a substantial return. The express company has only a leasehold interest in the property. If that leasehold is of any value to the express company or subject to taxation, it is included in the coverage of its gross earnings tax."

In that case, the lessor sought exemption from taxation based upon the imposition of the gross earnings tax on the lessee express agency. However, the court, as quoted above, noted that the exemption in that case was based upon ownership and not operation. We have recently held that ownership and use of property need not coexist as a prerequisite to tax exemption. Transport Leasing Corporation v. State, 294 Minn. 134, 199 N. W. 2d 817 (1972).

■ Consequently, we hold that the constitution and the statutes of our state prohibit the imposition of personal property taxes upon property operated by intervenor for railroad purposes and the fact that the property is owned by the petitioner cannot mandate a different result. To hold otherwise would clearly violate the provision of our constitution quoted above that no such taxes may be imposed without a vote of the people.

Further, such a result would clearly distort the clear and express language of our statute which applies to property owned by the railroad and property operated by the railroad, both of which are to be exempt from the imposition of any ad valorem taxes.

■ Respondent taxing authority argues that it is not seeking to impose any tax upon intervenor railroad but is only imposing a tax upon petitioner owner pursuant to the provisions of Minn. St. c. 273, and also particularly in § 272.69, subd. 3, which provides as follows:

"It is the intent of this section that leased personal property which is subject to personal property taxation be assessed to and the tax paid by the lessor, notwithstanding any agreement between lessor and lessee to the contrary. Any such agreement may, however, be construed as an agreement by the lessee to indemnify the lessor for the amount of personal property taxes paid. The listing required by this section shall be in lieu of any other property tax listing required by law for property required to be listed."

An isolated reading of this statute would seem to dictate such a result, but this statute must be construed together with the provisions of our constitution and § 295.02 quoted above. The general provisions of § 272.69, subd. 3, must be construed in the light of the specific provisions of § 295.02. In construing these sections, we are guided by the provisions of Minn. St. 645.26, subd. 1, which provide as follows:

"When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail."

A fair reading of these statutes can only lead to the conclusion that the legislature intended special consideration for property operated by the railroad. Consequently, such property, when leased by the railroad, must be regarded as an exception to the provisions of § 272.69, subd. 3, and under our constitutional and statutory requirements is not subject to an ad valorem tax.

The trial court in a memorandum accompanying its findings indicated that such a result would have the effect of no taxes being paid on the subject property. This conclusion is contrary to the interpretation our court has placed upon the gross earnings tax as quoted above in State v. Minneapolis & St. Louis Ry. Co. *supra*. The trial court further indicated that it placed great weight upon the fact that the property in question was not owned by the railroad, but this argument ignores the clear distinction in our statute regarding property *operated* by the railroad.

Respondent cites in support of its position a recent decision in Milwaukee Motor Transp. Co. v. Commr. of Taxation, 292 Minn. 66, 193 N. W. 2d 605 (1971). There, a divided court held that the plaintiff trucking company, a wholly owned subsidiary of a railroad which paid gross earnings taxes, was subject to payment of corporate income taxes. In that case, the subsidiary corporation also performed trucking services on a small scale for customers other than the railroad. This case is distinguishable since we there held that the exercise of a corporate franchise could be subjected to an excise (income) tax. The State of Minnesota in that case argued that § 295.02 was not applicable since the income tax is an excise tax and not a property tax and the gross earnings tax exemption contained in the statute applies only to an ad valorem tax which is a tax upon the value of the article or thing subject to taxation.

The Milwaukee Motor case merely clarified some of our earlier decisions, particularly The Pullman Co. v. Commr. of Taxation, 223 Minn. 96, 25 N. W. 2d 838 (1947), where a divided court held that a franchise could not be subjected to a property tax. The dissent in that case pointed out the distinction between the exist-

ence of the franchise and the exercise of the franchise. Our legislature shortly after the Pullman decision amended the appropriate statute by adding the word "excise" to the previous language, and Minn. St. 290.02 now provides for an imposition of an annual excise tax. The holding in the Milwaukee Motor case is consistent with the construction placed upon this statute, following its amendment, in Western Union Tel. Co. v. Spaeth, 232 Minn. 128, 44 N. W. 2d 440 (1950). However, those decisions are not applicable to the instant case since it is undisputed that we are dealing with an ad valorem tax, and as stated previously, our constitution and statutes prohibit the imposition of such taxes on railroad companies.

Reversed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.