**SOO LINE RAILROAD COMPANY,**
Respondent,

v.

**The COMMISSIONER OF REVENUE,**
Relator.

No. 48545.

Supreme Court of Minnesota.

Jan. 19, 1979.

Warren Spannaus, Atty. Gen., James W. Neher, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for relator.

Wayne C. Serkland, Minneapolis, for respondent.

Heard before SHERAN, C. J., and YETKA and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

The Commissioner of Revenue of the State of Minnesota petitions this court to review a decision of the Tax Court of Appeals in favor of Soo Line Railroad Company (railroad), wherein it was determined that uncollectable debts of the railroad may be deducted from gross earnings for purposes of computing the gross earnings tax imposed by Minn.St. 295.02. We reverse.

This matter was submitted to the Tax Court on a stipulated set of facts. Both parties adopt the following three findings of the Tax Court as sufficient to frame the legal issue involved in this appeal:

"1. Soo Line Railroad Company (hereinafter referred to as 'Soo Line') is a Minnesota corporation authorized to transact business in Minnesota and other states. It is engaged in the business of hauling freight as a railroad.

\*　　\*　　\*　　\*　　\*　　\*

"11. The following represents the total revenues included in the gross earnings of the Soo Line for the tax years of 1971 and 1972 pursuant to accrual accounting system, which revenues were never actually collected and are now totally uncollectable:

| | |
|---|---|
| 1971—First Half | $ 59.59 |
| 1971—Second Half | $ 668.50 |
| 1972—First Half | $ 263.27 |
| 1972—Second Half | $ 13,978.69 |

"12. The Soo Line used all reasonable efforts to collect the above amounts, but was unsuccessful due to reasons wholly beyond its control."

The amount of tax in dispute is $748.50.

The issue is clear: Are amounts billed by respondent, but subsequently determined to be uncollectable, includable in respondent's gross earnings for purposes of computing the gross earnings tax imposed by Minn.St. 295.02?

Minn.St. 295.02 provides, in pertinent part, that:

"Every railroad company owning or operating any line of railroad situated within, or partly within, this state shall, annually, pay to the commissioner of taxation, in lieu of all taxes upon all property within this state owned or operated for railway purposes by such company, including equipment, appurtenances, appendages and franchises thereof, a sum of money equal to five percent of the gross earnings derived from the operation of such line of railway within this state."

Minn.St. 295.01, subd. 2, defines gross earnings as follows:

"The term 'the gross earnings derived from the operation of such line of railway within this state,' as used in section 295.02, is hereby declared and shall be construed to mean all earnings on business beginning and ending within the state and a proportion, based upon the proportion of the mileage within the state to the entire mileage over which such business is done, of earnings on all interstate business passing through, into, or out of the state."

The Tax Court concluded that amounts billed by respondent but subsequently determined to be wholly uncollectable should be deducted from its gross earnings in arriving at the tax liability. It reasoned as follows:

" * * * The statutes are silent on this question and the only authority is a 1914 Attorney General's opinion that a telephone company could not deduct uncollectable accounts from its gross earnings. Opinion of Attorney General, No. 472, February 4, 1914. The long standing administrative determination of the state has been that earnings become includable in gross earnings at the time they are billed and no deduction is allowed for later determinations that the amount has become wholly uncollectable.

"Nevertheless, it is our view that a deduction for freight charges billed that later prove to be uncollectable for reasons wholly beyond the appellant's control should properly be excluded from gross earnings for tax purposes. Normally business expense items are not deducted in computing a gross earnings tax. This is perhaps the most striking difference between a gross earnings tax and an income tax. However, these 'earnings' were never received and in all equity should not be taxed." (Memorandum of Tax Court.)

At first blush it may appear that the holding of the Tax Court is equitably correct, but essential to the resolution of this issue is an analysis of the general nature and intent of the gross earnings tax. The gross earnings tax is imposed in lieu of a property tax. As summarized by this court in *State v. Minneapolis & St. L. Ry. Co.,* 257 Minn. 124, 129, 100 N.W.2d 669, 673 (1959):

"A tax which is *in lieu of all taxes upon all property within this state owned or operated for railroad purposes* is, accurately speaking, not a direct tax upon such property but a substitution for such tax. It is a property tax only in the limited sense 'that its imposition is based *upon the right to tax the property producing the earnings'* (italics supplied)

and it is aimed at the business to which it is applicable *considered as a whole and embracing all property used therein. State v. Minneapolis & St. L. R. Co.,* 204 Minn. 250, 253, 283 N.W. 244, 245." (Italics original; footnote omitted.)

The state argues that the tax is designed to measure the full value of the railroad's property as a going concern, and that hence there should be no deductions whatsoever from gross earnings. The railroad, however, claims that this is not the purpose of the tax but instead "only a bald legal fiction."[1]

■ It is well settled that the purpose of the gross earnings tax is to conveniently and efficiently compute the railroads' tax obligation attributable to their ownership of property in the state. As stated in *State v. Minneapolis & St. L. Ry. Co., supra*:

"Although the gross earnings tax is not in the true technical sense a property tax, the property owned and operated by the railroad is justifiably treated as the subject matter of the tax since it gives rise to the tax liability obligation, and the railroad's gross earnings are used only as a basis for computing the amount of that obligation. Neither the property itself, nor any percentage of its value, is the measure of the gross earnings tax as authorized by the state constitution. In *Minneapolis & St. L. R. Co. v. Koerner,* 85 Minn. 149, 150, 88 N.W. 430, 431, in pointing out that that resort to gross earnings is only for the purpose of providing a method of computation, this court said:

" 'It has long been settled by the decisions of this state that the gross earnings tax law was not intended to change the character of the tax, but, *for the purpose of certainty, was intended to change the method of computation.* The amount required to be paid still remains a tax upon the rail-

road property, * *. *.' (Italics supplied.)

\* \* \* \* \* \*

"In *State v. Chicago, R. I. & P. Ry. Co.,* 181 Minn. 615, 618, 232 N.W. 105, 106, 233 N.W. 866, this court stated that:

" ' \* \* \* The gross earnings tax is intended *to reach and apply to all gross income from railroad transportation business,* \* \* \*.' (Italics supplied.) The method of taxing railroads embodied in § 295.02 was adopted as a more certain and convenient means of computing the tax which would otherwise be due on railroad property. \* \* \* " 257 Minn. 130, 100 N.W.2d 674 (footnote omitted).

While the railroad is correct in pointing out that this court has long since abandoned the legal fiction that the gross earnings tax is a direct tax on property, it is incorrect in its argument that the gross earnings tax bears no relation to the value of the railroad's property. The above cited case makes this clear.

■ Focusing on the concept that the purpose of the gross earnings tax is to provide a certain and convenient means of computing the tax which would otherwise be due on the railroad's property, the equitable considerations relied on by the Tax Court lose their facial appeal. Rather, it is consistent with the purpose of the gross earnings tax to include uncollectable debts in earnings because this enables the tax to be a better measure of that tax which would otherwise be due on railroad property. Moreover, as emphasized by this court in *State v. Minneapolis & St. L. Ry. Co.,* 204 Minn. 250, 252, 283 N.W. 244, 245 (1939):

"It is gross earnings, not net earnings which form the basis of the tax \* \* \*.

\* \* \* \* \* \*

" \* \* \* The state takes that tax, not separately upon the earnings of each spe-

---

1. For some time it was doubted whether the state could constitutionally levy a tax on the gross earnings of an interstate carrier in any form whatsoever. See, generally, Blakey, Taxation in Minnesota, 326–27 (1932). To circumvent this problem, this court employed the legal fiction that the gross earnings tax was a direct tax on the railroads' property within the state and that gross earnings could be utilized as a precise method of arriving at the value of that property. See, e. g., *State v. United States Express Co.,* 114 Minn. 346, 131 N.W. 489 (1911), affirmed 223 U.S. 335, 32 S.Ct. 211, 56 L.Ed. 459 (1912).

cific item of property, but upon the aggregate earnings and does not authorize the deduction of any item whatever. * * * "

Our interpretation is supported by a 1914 attorney general's opinion, the only direct authority on this issue. In concluding that bad debts could not be excluded in calculating gross earnings, the author reasoned as follows:

"It is a significant fact that all of the statutes use the word 'earnings' and not the word 'receipts' or 'income.' In my opinion this means that the legislature considered that it was the actual earning capacity of the company and not its cash receipts that reflected the value of the property itself for taxation purposes. Even the term 'gross receipts' has been held in *State vs. Illinois Central Railway Company*, 246 Ill. 188, to be properly construed as meaning 'gross earnings' and as including what may be earned by the company, whether such earning is collected or whether it is voluntarily or involuntarily abandoned and left in the hands of the debtor, or the person to or for whom the service is rendered.

"It may well be said that the legislature did not mean that the state's taxes should be dependent upon the good or bad accounts, or accounting systems of the operating companies, but that the tax should at all times be measured by what the property earned in gross. It should also be remembered that the state never takes net earnings, or anything approaching net earnings, as the basis for computing the tax on the property. The loss which any business or industry sustains from bad accounts is always treated as one of the necessary and inexorable expenses of doing business. To deduct such uncollected or uncollectable accounts before reporting gross earnings for taxation would be equivalent to allowing the company to deduct part of its expenses of

operation. The remainder would not be gross earnings." [2] Op.Atty.Gen. No. 472, (February 4, 1914).

It is well settled that:

"Rulings of the attorney general, when they have been acted upon and gone unchallenged for many years, are of much persuasive weight in statutory construction." *In re Adoption of Anderson*, 235 Minn. 192, 199, 50 N.W.2d 278, 284 (1951).

Accordingly, it is proper for us to give considerable weight to this 1914 opinion in our construction of the statute.

Likewise, the commissioner's long-standing interpretation that gross earnings include amounts billed but subsequently determined to be uncollectable should be given consideration. As summarized in *Mankato Citizens Tel. Co. v. Commissioner of Taxation*, 275 Minn. 107, 112, 145 N.W.2d 313, 317 (1966):

"Another important rule of statutory construction is that administrative interpretation of statutes, although not binding upon the courts, should receive consideration unless found to be erroneous and in conflict with the express purpose of the act and the intention of the legislature."

In this absence of any statutory provision which can be interpreted to permit the asserted deduction, we hold that the gross earnings tax is properly computed on the railroad's gross earnings without said deduction. This determination is buttressed by the long-standing administrative practice which has gone unchallenged until now; the equally long-standing attorney general's opinion concluding that said deductions are not allowable; and our past holding drawing the distinction between "gross earnings" and "net earnings." We therefore feel that the decision of the Tax Court of Appeals, although stated "in all equity," has no basis in Minnesota law.

Reversed.

---

2. Respondent attempts to distinguish the reasoning of this attorney general opinion by again arguing that the gross earnings tax bears no relation to the railroad's property, and that all such references to such a relationship were intended only to continue the aforementioned fiction. As stated above, this contention is clearly refuted by our discussion in *State v. Minneapolis and St. L. Ry. Co.*, 257 Minn. 124, 100 N.W.2d 669 (1959).